Filed 7/2/13  Kiet v. Litton Loan Servicing CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TANG KIET, | |
| Plaintiff and Appellant, | G047505 |
| v. | (Super. Ct. No. 30-2010-00432088) |
| LITTON LOAN SERVICING, LP, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Karen J. Bravata, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Law Office of Quyen Kiet and Quyen Kiet for Plaintiff and Appellant.

Houser & Allison, Eric D. Houser and M. Benjamin Susman for Defendants and Respondents.

The first deed of trust on residential real property was foreclosed upon and bought by the lender at the nonjudicial foreclosure sale for a full credit bid, leaving appellant Tang Kiet as a sold-out junior lien holder. Kiet did not appear at or bid at the trustee's sale, nor did he otherwise attempt to cure the default on the senior lien. Instead, he filed the instant action against the lenders, Bank of America (as successor to Countrywide Home Loans, Inc. (Countrywide)) and the Bank of New York as Trustee for the Certificate Holders CWL, Inc. Asset-Backed Certificates, Series 2002-03 (BNY), the loan servicer, Litton Loan Servicing, LP (Litton), and Mortgage Electronic Registration Systems, Inc. (MERS) (hereafter collectively referred to as the Defendants unless the context indicates otherwise), seeking to recover from them the amount of his extinguished junior lien.

Kiet appeals from the judgment in favor of the Defendants that followed their successful summary judgment motion. He primarily contends the lender's full credit bid included amounts the lender was not entitled to add to the secured debt (specifically property taxes and hazard insurance premiums paid by the lender), and included inflated amounts of principal and interest. Kiet urges the amounts improperly included in the lender's full credit bid constitute surplus sales proceeds that should have been made available to satisfy his junior lien. We reject Kiet's contentions and affirm the judgment.

FACTS AND PROCEDURE

*The Complaint*

In April 2002, Countrywide made an adjustable rate real estate loan of $437,750 to Lan Anh Truong (Borrower), evidenced by a promissory note (the Note) and secured by a recorded first deed of trust on residential property located in Fountain Valley. By the time of the foreclosure, BNY was the lender's assignee via

2

MERS,[1] and Litton was the loan servicer.  In December 2003, Kiet, who is an attorney, was named beneficiary of a second deed of trust on the property securing a $75,000 note.

Kiet alleged that when he learned of Borrower's March 2006 default on the payments on the loan secured by the first deed of trust, he contacted Litton in August 2006 to advise it of his secured interest in the property.  The trustee's sale was set for December 19, 2008, and the notice of the trustee's sale set the minimum bid at $559,806, which Kiet alleged was enough to cover both liens.  The property was purchased by lender BNY at the trustee's sale for a full credit bid of $622,136.  Kiet's post-sale requests that his junior lien be satisfied went unanswered by Litton.  Kiet alleged Defendants "inflated" the amount of the bid on the property by including amounts to which they were not entitled.  He alleged the difference between the amounts Borrower really owed on the Note and BNY's bid was at least $75,182—an amount that should have been available to pay off the second deed of trust.  Based on the foregoing allegations, Kiet's complaint contained causes of action against all the Defendants for equitable estoppel, negligent misrepresentation, enforcement of lien, breach of implied in fact contract, common counts, and unjust enrichment.

*Summary Judgment Motion*

The Defendants moved for summary judgment.  Before setting forth the facts contained in the separate statements, we describe the trust deeds in more detail.

---

[1]     "MERS is a private corporation that administers a national registry of real estate debt interest transactions.  Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records.  [Citation.]  [¶]  Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust.  [Citation.]  Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender."  (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 267 (*Fontenot*).)

3

*The First Deed of Trust and the Note*

The April 2002 loan to Borrower was an adjustable rate loan based on the LIBOR (London Interbank Offered Rate) plus six percent. The Note specifically referred to and was incorporated into the first deed of trust. As relevant to the issues raised in this appeal, the first deed of trust defined the secured loan as including "the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this [first deed of trust] plus interest." The first deed of trust provided Borrower "shall pay all taxes, assessments, charges, fines, and impositions attributable to the [secured property] which can attain priority over this [first deed of trust.]" If Borrower failed to pay property taxes, the lender could do so in order to protect its security interest in the property, and any amounts so expended would become additional debt secured by the first deed of trust bearing interest at the same rate as the Note from the date of disbursement. The first deed of trust further provided Borrower must maintain hazard insurance on the property and if Borrower failed to do so, the lender could obtain the insurance and any amounts expended by the lender in maintaining hazard insurance coverage "shall become additional debt of Borrower secured by this [first deed of trust]" bearing interest at the rate provided for in the Note.

*The Second Deed of Trust*

On December 8, 2003, without obtaining the required approval from the lender, Borrower executed a grant deed transferring title of the property to St. Thomas Corp., and a few days later Phan Anh Do as president of St. Thomas Corp. executed a promissory note for $75,000 payable to Kiet secured by a second deed of trust recorded against the property with Kiet as beneficiary. The reasons for this transaction are not entirely clear. At his deposition, Kiet testified he was the attorney for St. Thomas and the $75,000 note was for attorney fees related to a bankruptcy proceeding, but he could not explain why the property had been transferred to St. Thomas or what Borrower's relationship was with St. Thomas.

4

*Defendants' Separate Statement*

Borrower stopped paying on the loan secured by the first deed of trust in March 2006 and a notice of default was recorded on March 31, 2008. On October 28, 2008, the foreclosure trustee executed a notice of trustee's sale to take place on November 26, 2008, which set a minimum bid of $559,806. The notice of the trustee's sale was recorded on November 7, 2008. On December 19, 2008, the property was sold at public auction for a full credit bid by BNY. The full credit bid amount of $622,136, included, among other amounts, unpaid principal and interest of $560,910, property taxes of $42,002, hazard insurance premiums of $13,812, attorney fees of $1,770, and statutory disbursements of $1,983.

Defendants put forth the following as undisputed facts: The first deed of trust was senior to the second deed of trust. It was foreclosed by a trustee's sale on December 19, 2008, for a full credit bid representing the amount of unpaid debt and costs owed by Borrower. Kiet did not attend the foreclosure sale, cure the default on the first deed of trust prior to foreclosure, or redeem the property at the foreclosure sale. Kiet did not communicate with MERS, Bank of America, or BNY. Litton did not promise Kiet it would pay him surplus funds from the foreclosure sale. Kiet was aware of the foreclosure on the first deed of trust since 2006, and he testified at his deposition that when he contacted Litton he was told Litton could not discuss the first deed of trust with him because he was not the borrower. Kiet did not record a request for special notice of the trustee's sale until December 16, 2008. Kiet testified he made no attempts to collect on the promissory note from St. Thomas.

*Kiet's Opposition*

Kiet's opposition included his declaration in which he attempted to dispute many of Defendants' undisputed facts. Kiet's declaration attached as exhibits many of the same documents included in Defendants' moving papers. Kiet declared he contacted Litton *after* the trustee's sale to ask for payment of his second deed of trust, was told they

5

were reviewing the matter, and "promised that I would be paid if there was a surplus of funds." In his declaration, Kiet stated he was "led by Litton[]" to believe the sales price obtained was sufficient to cover the first deed of trust and the second deed of trust. Kiet attached as exhibit M what appears to be an Internet printout from Zillow, dated December 26, 2008 (i.e., *after* the trustee's sale) listing the two liens on the property (the $437,750 first deed of trust and the $75,000 second deed of trust), which showed the minimum foreclosure bid price of $559,806. He attached as exhibit H, a letter dated January 2, 2009 (i.e., *after* the trustee's sale), he sent to Litton asking for payment of the debt secured by the second deed of trust. Kiet also included a declaration from Borrower in which she stated she had never "acknowledged" the amounts expended to pay property taxes or hazard insurance premiums, to be part of the amount she owed under the Note.

Kiet also included with his opposition a document designated exhibit F, of which he asked the court to take judicial notice. Exhibit F was a printout of what Kiet described as "a true and correct copy of table of historical 6-month LIBOR rates" from January 2002 to July 2012, published "on-line" at a website found at the Internet address "www.moneycafe.com." He also included exhibit G, which was "a true and correct copy of Lender's Officer's Certificate produced by [d]efendant L[itton] in discovery." The document has Borrower's name and address at the top, and three columns comprised of a list of dates followed by the amount of principal and interest due on each date, beginning March 2006 and ending May 2009. Defendants objected to both exhibits as inadmissible hearsay and lacking relevance.

*Ruling*

The trial court granted Defendants' summary judgment motion. As relevant to the issues Kiet raises in his appeal, the court found he could not prevail on his cause of action for enforcement of lien because his junior lien was extinguished by the foreclosure of the senior lien by the lender's full credit bid at the trustee sale, which left no surplus as a matter of law. The court rejected Kiet's argument inclusion of property

6

taxes and insurance advances in the full credit bid was improper—it was undisputed Borrower did not make all of her property tax and insurance payments and the first deed of trust specifically provided property taxes and insurance advanced by the lender became part of the total debt owed under the first deed of trust. Additionally, Kiet had no standing to enforce the terms of the Note or the first deed of trust as he was not a party to, or third party beneficiary of, either. The court found there were no triable issues of fact as to Kiet's common counts and unjust enrichment causes of action. The court sustained Defendants' objections to exhibits F and G, and declined to take judicial notice of either document.

DISCUSSION

*A. Summary Judgment Standard of Review*

"Summary judgment is appropriate only if there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. [Citation.] . . . A defendant moving for summary judgment . . . must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. [Citation.] The defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to support an element of the cause of action. [Citation.] If the defendant meets this burden, the burden shifts to the plaintiff to set forth 'specific facts' showing that a triable issue of material fact exists. [Citation.] [¶] We review the trial court's ruling de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opposing party. [Citation.] We will affirm an order granting summary judgment . . . if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons. [Citations.]" (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 119-120.)

7

"'A different analysis is required for our review of the trial court's . . . rulings on evidentiary objections.  Although it is often said that an appellate court reviews a summary judgment motion 'de novo,' the weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard.  [Citations.]'  [Citation.]" (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.)

B.  *Evidentiary Rulings*

Kiet contends the trial court erred by not admitting into evidence his exhibit F, a printout of LIBOR rates from January 2002 to July 2012, he found "on-line," and exhibit G, a document titled "Lender's Officer's Certificate," which he states was produced by Litton in discovery.  The trial court sustained Defendants' relevance and hearsay objections to both documents.

"'On appeals challenging discretionary trial court rulings, it is *appellant's* burden to establish an abuse of discretion.  [Citations.]'  [Citation.]" (*Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 624 (*Ramos*).)  Kiet has failed to establish an abuse of discretion here.

The trial court did not err by declining to take judicial notice of exhibit F, the printout of the website found at the Internet address "www.moneycare.com" listing historical LIBOR rates.  Judicial notice is a court's recognition of the existence of a matter of law or fact relevant to an issue as a substitute for formal proof of that matter. (*Fontenot, supra,* 198 Cal.App.4th at p. 264; *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117.)  "'Taking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning.'  [Citation.]  While courts take judicial notice of public records, *they do not take notice of the truth of matters stated therein*.  [Citation.]  'When judicial notice is taken of a document, . . . the truthfulness and proper interpretation of the document are disputable.'  [Citation.]" (*Herrera v. Deutsche Bank National Trust Co.*

(2011) 196 Cal.App.4th 1366, 1375, italics added; see also *In re Christian P.* (2012) 207 Cal.App.4th 1266, 1275, fn. 4 [judicial "notice [of court record] is limited to the existence of the documents and is not the same as taking notice of the truth of any matters or facts stated therein"].)  Although the printout might be an accurate representation of the website Kiet found at "www.moneycare.com," that does not allow the trial court to take judicial notice of the *facts* that were asserted on that webpage.  Accordingly, the trial court correctly ruled the document inadmissible.

Nor has Kiet demonstrated the trial court abused its discretion by excluding his exhibit G.  Kiet contends the one-page document, titled "Lender's Officer's Certificate" was admissible because it was produced by Litton in discovery, and relevant because it has Borrower's name and loan number on it.  Kiet offers no reasoned legal analysis of the issues to which the document pertains or how its exclusion prejudiced him.  The document is a list of payment dates beginning in March 2006 and ending May 2009, followed by amounts of principal and interest due on each date.  In his opposition to the summary judgment motion, Kiet asserted it showed the "lender" charged interest after the foreclosure.  But there is nothing explaining who created the document, when it was prepared, what it was for, or how it relates to the amounts calculated for BNY's full credit bid.  Kiet has failed to demonstrate the document's relevance and has failed to meet his appellate burden.  (*Ramos, supra,* 82 Cal.App.4th at p. 624.)

## C.  *Enforcement of Lien Cause of Action*

As to the enforcement of lien cause of action, Kiet claimed there were "surplus funds" from the trustee's sale that should have been made available to pay his junior lien on the property in accordance with the priorities set forth in Civil Code section 2924k, subdivision (a).  Defendants moved for summary judgment on the grounds lender BNY's full credit bid extinguished the junior lien, which left no surplus sale proceeds as a matter of law, and Kiet took no steps to protect his junior lien prior to its extinguishment.  Defendants are correct.

9

Civil Code section 2924k, subdivision (a), requires the foreclosure trustee to distribute the proceeds of the trustee's sale in the following order of priority: (1) the allowable costs and expenses associated with exercising the power of sale; (2) payment of the obligations secured by the deed of trust being foreclosed upon (e.g., the senior lien); (3) satisfying junior liens and encumbrances; and then (4) to the trustor.

The holder of a subordinate deed of trust will recover all or a portion of the debt secured by the subordinate deed of trust only if the successful trustee's sale bidder pays enough to pay off all of senior and all or a portion of the junior indebtedness. (*South Bay Building Enterprises, Inc. v. Riviera Lend-Lease*, *Inc.* (1999) 72 Cal.App.4th 1111, 1120-1121; *FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1023 (*FPCI RE-HAB 01*); Civ. Code, § 2924k, subd. (a).) If the successful bidder purchases at a price insufficient to pay off any of the junior indebtedness after the proceeds of the sale are applied to the senior indebtedness (and other statutory costs and expenses attributable to the sale see Civil Code, § 2924k, subd. (a)), then the holder of the junior deed of trust is out of luck. Kiet is out of luck.

In this case, the lender BNY was the only bidder at the trustee's sale, and it made a full credit bid. A "full credit bid" is described as follows: "At a nonjudicial foreclosure sale, if the lender chooses to bid, it does so in the capacity of a purchaser. [Citation.] The only distinction between the lender and any other bidder is that the lender is not required to pay cash, but is entitled to make a credit bid up to the amount of the outstanding indebtedness. [Citations.] The purpose of this entitlement is to avoid the inefficiency of requiring the lender to tender cash which would only be immediately returned to it. [Citation.] A 'full credit bid' is a bid 'in an amount equal to the unpaid principal and interest of the mortgage debt, together with the costs, fees and other expenses of the foreclosure.' [Citation.] If the full credit bid is successful, i.e., results in the acquisition of the property, the lender pays the full outstanding balance of the debt and costs of foreclosure to itself and takes title to the security property, releasing the

10

borrower from further obligations under the defaulted note. [Citation.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1238.)

In other words, when the foreclosing lender makes a full credit bid on the property, by its very nature, no money changes hands. The full credit bid conclusively establishes the value of the property. (*Bank of America v. Quackenbush* (1997) 56 Cal.App.4th 1167, 1171). There is no "surplus" to distribute. The lender's debt is extinguished, and it gets title to the property. "If a junior lienor does not cure the default in the senior obligation or redeem at the senior foreclosure, its lien will be extinguished at the foreclosure sale . . . ." (*FPCI RE-HAB 01, supra,* 207 Cal.App.3d at p. 1023.)

We reject Kiet's argument the lender's full credit bid improperly included amounts not included in the debt secured by the first deed of trust, somehow requiring the lender (or one of the other defendants) to now pay those overbid amounts to Kiet—the sold-out junior. Kiet primarily argues the lender's payment of $42,002 in delinquent property taxes and $13,812 in hazard insurance premiums was voluntary and those amounts cannot be considered part of the debt secured by the first deed of trust. Nonsense.

The first deed of trust specifically requires Borrower to pay property taxes and maintain insurance, and provides if Borrower defaults in those obligations, the lender may advance those costs and add them to the debt secured by the first deed of trust. Kiet provides no authority supporting his contention the absence of provisions concerning the lender's payment of taxes and insurance in the Note controls; it is well established that a promissory note and deed of trust are part of a single transaction and are read together. (See *Huckell v. Matranga* (1979) 99 Cal.App.3d 471, 481.)

Moreover, numerous statutes and cases specifically validate the lender's rights in this regard so as to protect its security interest in the property. For example, by statute liens for real property taxes have priority over *all* private liens, regardless of the time of their creation. (See Rev. & Tax. Code, §§ 2192.1, 3712; Gov. Code, § 53935.)

11

And when the trustor on a deed of trust fails to pay property taxes when due, the lender/beneficiary may make the payments, add the amount paid to the principal indebtedness and foreclose the security if those amounts are not reimbursed. (*Security-First Nat. Bank v. Lamb* (1931) 212 Cal. 64, 68-69.) Indeed Civil Code section 2876 specifically provides that when a lien holder "is compelled to satisfy a prior lien for his own protection, he may enforce payment of the amount so paid by him, as a part of the claim for which his own lien exists."

Similarly, case law has acknowledged that both the borrower/trustor and the lender/beneficiary have separate insurable interests in the property (*Mosee v. Firemen's Ins. Co. of Newark* (1927) 87 Cal.App. 473, 475; *Loring v. Dutchess Ins. Co.* (1905) 1 Cal.App. 186, 188), and if the borrower/trustor defaults on the obligations set forth in the deed of trust to keep the property adequately insured for the benefit of both, the lender beneficiary is entitled to insure or pay the premium and add that amount to the secured debt. (See *Campbell v. Realty Title Co.* (1942) 20 Cal.2d 195; 27 Cal.Jur. 3d (2013) Deed of Trust, § 99; Bernhardt, Cal. Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2012) Trustor's Failure to Insure, § 8.58, p. 683; see also Fin. Code, §§ 1487 & 7461 [allow enforcement of provisions in mortgages and deed of trusts accelerating the debt and foreclosing for nonpayment of taxes and insurance whether or not lender's security interest in the property has been impaired].)

We are similarly unimpressed by Kiet's argument the lender's full credit bid was based on incorrect calculations of the principal remaining due and inflated interest charges, and therefore either the lender (or one of the other defendants) must pay those amounts to Kiet. Even if the amounts of principal and accrued interest owed by Borrower on the Note were miscalculated, Kiet suggests no basis on which he can assert Borrower's rights. It is undisputed Kiet made no attempt to cure Borrower's default on the first deed of trust so as to protect his junior lien, did not bid on the property at the foreclosure sale, or redeem the property. And there is no evidence of any irregularities in

12

the trustee's sale that precluded Kiet from curing the default on the first deed of trust or prevented a bid by a higher bidder.[2]  Furthermore, "In order to prove [he] was damaged by [any] irregularities in the foreclosure sale which dissuaded or prevented a higher bid, the junior lienor would have to produce a ready, willing and able buyer who would have paid the higher price but for the wrongful conduct.  Otherwise, damages alleged would be speculative."  (*FPCI RE-HAB 01*, *supra,* 207 Cal.App.3d at p. 1023; see also *Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1424.)  Kiet presented no evidence he or anyone else was ready, willing, and able to bid on the property at the trustee's sale.  In short, there was no material issue of fact as to whether there was any "surplus" of funds from the trustee's sale, and the trial court correctly granted summary judgment.

### D.  *Common Counts and Unjust Enrichment Causes of Action*

Kiet contends the trial court erred by granting summary judgment on his common counts and unjust enrichment causes of action.  He engages in absolutely no reasoned legal analysis of either cause of action.  He provides no citation to authority, or any discussion of the requisites for those claims.  While we perform a de novo review of summary adjudications, it is always the appellant's burden on appeal to demonstrate the trial court erred.  (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649-650,

---

[2]        Kiet makes a passing reference to the trustee's sale date being "changed without giving notice to Borrower and other interested parties," but he offers no *facts* indicating an irregularity in the trustee's sale.  The record shows the trustee's sale was properly noticed to take place on November 26, 2008.  The trustee's sale actually occurred on December 19, 2008.  Civil Code section 2924g requires only that a postponement of the trustee's sale (for less than 365 days) be orally announced, i.e., "by public declaration by the trustee at the time and place last appointed for sale.  . . . No other notice of postponement need be given."  (Civ. Code, § 2924g, subds. (a) & (d).)  The trustee's deed states all legal notice requirements were complied with creating a presumption the sale was conducted regularly and properly.  (Civ. Code, § 2924, subd. (c); *Residential Capital v. Cal-Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 823, fn. 4.)  Kiet presented no *evidence* rebutting the presumption notice of any postponement was properly given.

13

["party asserting trial court error may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised"].)  Accordingly, we deem the contentions waived.  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [when appellant raises issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; see also *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


IKOLA, J.

14