Filed 7/9/14  Matlock v. J.P. Morgan Chase Bank CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LOVELL L. MATLOCK, et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>　v.<br><br>J.P. MORGAN CHASE BANK, N.A., et al.,<br><br>　　　Defendants and Respondents. | B246823<br><br>(Los Angeles County<br>Super. Ct. No. BC456493) |

APPEAL from an order of the Superior Court of Los Angeles County.  David L. Minning, Judge.  Affirmed.

Law Offices of Charles O. Agege and Charles O. Agege for Plaintiffs and Appellants.

Bryan Cave, Rosario L. Vizzie and Louise D. Nutt for Defendants and Respondents.

_____

Borrowers brought an action against several financial institutions, alleging breach of contract, predatory lending practices, and improper foreclosure proceedings. Defendants demurred on the essential grounds that no breach or improper foreclosure occurred, plaintiffs lacked standing to challenge foreclosure proceedings, and any cause of action predicated on the loan origination was time barred. The trial court sustained the demurrer without leave to amend. We affirm.

**BACKGROUND**

We take the facts from the second amended complaint, which is operative, accepting them as true for present purposes. In August 2006, plaintiffs Lovell Matlock and Michaelle Young obtained a 40-year, adjustable rate mortgage loan in the amount of $524,000 from MetroCities Mortgage, LLC doing business as No Red Tape Mortgage (Metro). The loan bore an initial interest rate of 8.25 percent, adjustable monthly beginning in October 2006 based on an index of United States treasury securities, with a maximum rate of 9.950 percent.

The loan had a negative amortization feature by which Metro agreed to accept any monthly payment that covered accrued interest at a rate of only 1.0 percent. The unpaid accrued interest would then be capitalized monthly onto the outstanding principal balance. However, this feature would exist only so long as the unpaid principal did not exceed 110 percent of the original principal. Once it did, the loan would become fully amortized, meaning each monthly payment would have to be in an amount sufficient to repay the unpaid principal in full by the maturity date in equal installments at the current interest rate.

Pursuant to the negative amortization schedule, the initial minimum monthly payment Metro would accept was $1,324.97, much less than the borrowers would be required to pay under normal amortization. (The interest alone on a $524,000 loan at 8.25 percent would have been approximately $3,600 at the outset.)

Plaintiffs' loan was secured by a deed of trust on their residence. Defendant Fidelity National Loan Portfolio Solutions (Fidelity) was the trustee and defendant

2

Mortgage Electronic Registration Systems, Inc. (MERS) the beneficiary.  The deed of trust entitled the lender to substitute the trustee without notice to the borrower, assign the note to third parties without notice, and sell the property in case of default.  Plaintiffs signed the deed of trust and an adjustable rate rider, expressly indicating they accepted the terms of both.

Metro assigned plaintiffs' loan to Washington Mutual Bank, which was succeeded by JPMorgan Chase Bank.  On June 23, 2009, plaintiffs certified they were unable to make their monthly mortgage payments and entered into a loan modification agreement whereby they agreed to pay $1,884 per month for a trial period, followed by $1,962.92 for a second trial period.  On October 1, 2010, plaintiffs' mortgage payment went from $1,324.97 to $2,485.21.  Soon thereafter, they defaulted.

On March 24, 2011, MERS assigned its beneficial interest under the deed of trust to U.S. Bank, N.A., which on the same day substituted California Reconveyance Company as trustee (CRC).  On April 20, 2011, CRC served plaintiffs with a notice of default and election to sell, alleging they were in default on the note in the amount of $62,716.69.

On March 3, 2011, plaintiffs, in propria persona, sued Metro, Fidelity, MERS, and Chase Home Finance, LLC (Chase) for breach of contract, violation of lending and foreclosure laws, and fraud, seeking declaratory and injunctive relief and an accounting.  Defendants demurred to plaintiffs' first amended complaint, but on August 18, 2011, plaintiffs filed for bankruptcy protection, resulting in a stay.  On April 2, 2012, after the stay was lifted, the trial court overruled defendants' demurrer to plaintiffs' cause of action for an accounting, sustained without leave to amend the demurrer to plaintiffs' declaratory relief cause of action, and otherwise sustained the demurrer with leave to amend.

Plaintiffs untimely filed a second amended complaint in which they:  (1) alleged nine causes of action—breach of contract; breach of the covenant of good faith and fair dealing; unfair business practices; violation of foreclosure laws; wrongful foreclosure;

3

violation of lending laws; financial elder abuse; fraud; and breach of the loan modification agreement; (2) styled four requests for relief as causes of action—rescission, reformation, declaratory relief, accounting; and (3) added U.S. Bank and CRC as defendants. Plaintiffs subsequently dismissed Metro from the case, and the remaining defendants again demurred.

When plaintiffs failed to file an opposition or attend the hearing, the trial court sustained defendants' demurer without leave to amend but stayed its order pending notice to plaintiffs. After plaintiffs applied ex parte to vacate the order, the trial court re-set the hearing and afforded plaintiffs time to file an opposition. Plaintiffs then filed an untimely opposition.

The trial court sustained defendants' demurrer without leave to amend on "the basis of the Moving and Reply papers, and the fact that plaintiffs' 2nd amended complaint adds several causes of action (plaintiffs not having obtained leave of the court), and because the 2nd amended complaint was filed late." After plaintiffs' motion to set aside the order was denied, they appealed the ruling sustaining the demurrer.

In their opening brief plaintiffs mischaracterized the trial court's ruling, contending the sole basis for it was that their opposition was untimely. Their only argument on appeal was that the trial court abused its discretion by failing to assess the merits of the second amended complaint. After defendants in their opposition correctly observed the court's ruling was made on three independent grounds, one of which addressed the merits of the complaint, plaintiffs for the first time in their reply also addressed the merits. We invited defendants to respond to plaintiffs' belated merits arguments in a sur-reply, which they have now done.

## DISCUSSION

### A. Standard of review

In reviewing an order sustaining a demurrer without leave to amend, we accept as true the properly pleaded factual allegations of the complaint and construe them liberally with a view to attaining substantial justice among the parties. (Code Civ. Proc., § 452;

4

*McCall v. PacifiCare of California, Inc*. (2001) 25 Cal.4th 412, 415; *King v. Central Bank* (1977) 18 Cal.3d 840, 843.)  Where, as here, the complaint references the terms of a contract and recorded documents, we consider those terms as part of the pleading and take judicial notice of the recorded documents.  We review the complaint de novo to determine whether the trial court properly sustained the demurrer.  (*Cantu v. Resolution Trust Corp*. (1992) 4 Cal.App.4th 857, 879.)

**B.      Breach of Contract and Covenant**

In their first and second causes of action, for breach of contract and breach of the covenant of good faith and fair dealing, plaintiffs allege Chase and U.S. Bank failed to comply with contractual notice provisions prior to recording the notice of default, which plaintiffs allege accelerated the loan.  Defendants argue the notice of default itself gave all notice that was due under the deed of trust.  We agree.

The deed of trust provided that in case of default the lender may accelerate the loan by demanding payment in full, and sell the property if payment is not made.  However, the lender must give 30 days notice prior to acceleration and specify:  the default; action required to cure the default; a date at least 30 days from the date of the notice by which default must be cured; and that failure to cure may result in acceleration and sale.  On April 20, 2011, defendants served plaintiffs with a notice of default, which stated plaintiffs were in default in the amount of $62,716.69, but could bring their account into good standing by paying all past due amounts plus costs and expenses.  The notice provided that this payment may occur as late as five days prior to sale of the property, which would be at least three months after the date of the notice.  The notice of default thus provided all notice due under the deed of trust.

Plaintiffs argue the notice of default itself constituted an acceleration because in the last sentence it states, "the present beneficiary . . . has declared and does hereby declare all sums secured . . . immediately due and payable and has elected . . . to cause the trust property to be sold . . . ."  The argument is without merit.  Acceleration of a loan is the demand for payment of all or part of the balance due sooner than was originally

5

agreed.  (Black's Law Dict. (6th ed.) p. 13.)  The notice of default here did not demand such payment.  On the contrary, it afforded plaintiffs at least three months to make payments that were in arrears, after which their account would be in good standing and they could continue making payments as originally agreed.  Defendants' demurrer to plaintiffs' cause of action was therefore properly sustained.

## C.	Standing

In their second cause of action, for breach of the covenant of good faith and fair dealing, and their fifth cause of action, for wrongful foreclosure, plaintiffs allege CRC was not entitled to initiate foreclosure proceedings because the assignment of plaintiffs' deed of trust from MERS to U.S. Bank and CRC's subsequent substitution as trustee were invalid.  Plaintiffs do not explain why they were invalid, but imply some impropriety arose from two facts:  The assignment and substitution were (1) effected by a person who was simultaneously an officer of both MERS and U.S. Bank and (2) recorded on a date after the notice of default.  Defendants argue plaintiffs have no standing to bring these claims.  We agree.

"Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor.  As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note." (*Herrera v. Federal National Mortgage Assn*. (2012) 205 Cal.App.4th 1495, 1507.)  An impropriety in the transfer of a promissory note would therefore affect only the parties to the transaction, not the borrower.  The borrower thus lacks standing to enforce any agreements relating to such transactions.  (*Jenkins v. JPMorgan Chase Bank, N.A*. (2013) 216 Cal.App.4th 497, 515 (*Jenkins*).)

Even if plaintiffs are correct that the transfer of their deed of trust from MERS to U.S. Bank was improper, the relevant parties to such a transaction were MERS and U.S. Bank.  Plaintiffs lack standing to enforce any agreements relating to the transfer because they were not injured by it—their obligations under the loan remained unchanged.  (See *Jenkins*, *supra*, 216 Cal.App.4th at p. 515.)  The true victim would be an individual or

6

entity that believes it has a present beneficial interest in the trust deed and may suffer the unauthorized loss of that interest. (*Ibid*.) Plaintiffs "may not assume the theoretical claims of hypothetical transferors and transferees" to assert causes of action for breach of covenant, declaratory relief or wrongful foreclosure. (*Ibid*.)

## D.  Tender

In their second, third, fifth, eleventh and twelfth causes of action, for breach of covenant, unfair business practices, wrongful foreclosure, breach of the modification agreement and declaratory relief, respectively, plaintiffs allege breach of the loan agreement and wrongful foreclosure on the grounds that (1) defendants failed to provide adequate notice and (2) irregularities accompanied the assignment of their deed of trust from MERS to U.S. Bank and the substitution of CRC as trustee. Defendants argue plaintiffs have no standing to make such claims because they failed to tender payment sufficient to bring their account into good standing. We agree.

A debtor who is in default of a mortgage loan must allege a credible tender of the amount due to maintain any cause of action for wrongful foreclosure. (See *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109 [debtors are required to allege tender of the amount due "in order to maintain any cause of action for irregularity in the sale procedure"]; *FPCI RE-HAB 01 v. E & G Investments, Ltd*. (1989) 207 Cal.App.3d 1018, 1021; *Karlsen v. American Savings and Loan Assn*. (1971) 15 Cal.App.3d 112, 117-118.) An allegation of an offer to tender must set forth facts explaining the debtor's ability to perform. Here, plaintiffs alleged they "unconditionally offer to tender any amounts due on the Note," but alleged no facts indicating they had actually tendered the amounts due or were able to perform. Nor do plaintiffs indicate in their briefs that they are prepared and able to cure their default by tendering payment. On the contrary, they essentially admit they do not have the immediate ability to cure the default.

Plaintiffs argue tender is unnecessary where such a requirement would be inequitable. Plaintiffs describe no facts substantiating their claim of inequity, but cite *Humboldt Savings Bank v. McCleverty* (1911) 161 Cal. 285, 291. There, the

7

homeowner's property, which was worth $5,000, was held as security for the debt of another that amounted to more than $57,000. The court held "[i]t must be apparent, from a mere statement of these facts, that there is no equity in the claim that, in order to be enabled to attack an unauthorized sale of her five-thousand-dollar homestead, she must pay, or offer to pay, a debt of $57,000, for which she is in no way liable." (*Ibid.*) Whatever the viability of *Humboldt Savings Bank v. McCleverty* today, the case is clearly distinguishable. Here, in contrast to *McCleverty*, the debt is plaintiffs' own, not another's, and the tender needed to prevent foreclosure is much less than, not more than, the value of plaintiffs' interest.

## E.      Violation of Civil Code section 2923.5

Plaintiffs allege in their fourth cause of action, for violation of Civil Code section 2923.5, that defendants failed to make contact with them prior to recording a notice of default.

Civil Code section 2923.5 provides that a mortgage trustee or beneficiary may not record a notice of default until it contacts the borrower "in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." (Civ. Code, § 2923.5, subds. (a)(1) & (a)(2).) As part of their eleventh cause of action, for breach of the June 23, 2009 loan modification agreement, plaintiffs appended to their complaint a copy of that agreement. In it, plaintiffs certified they were unable to make their monthly mortgage payments and defendants agreed to accept $1,884 per month for a trial period. This agreement satisfied Civil Code section 2923.5. (See, e.g., *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1494-1495.) Accordingly, the trial court properly sustained the demurrer to plaintiffs' cause of action for violation of Civil Code section 2923.5.

## F.      Violation of Lending Laws and Financial Elder Abuse

In their sixth and seventh causes of action, plaintiffs allege defendants violated lending laws and committed financial elder abuse by inducing them to obtain a predatory loan. Plaintiffs acknowledge on appeal that these claims are not predicated on

defendants' foreclosure proceedings. Defendants contend they are not liable under either cause of action because they were not involved in the origination of plaintiffs' loan, and at any rate the applicable limitations periods have passed.

An action for violation of California's anti-predatory lending laws, sections 4970-4978.8 of the Finance Code, is subject to the one-year limitations period set forth in Civil Code section 340. An action for financial elder abuse is subject to a four-year limitations period. (Welf. & Inst. Code, § 15657.5.) The present action is time barred under either statute because plaintiffs did not file suit until March 3, 2011, more than four years after the 2006 loan origination date.

Plaintiffs argue the limitations periods should be tolled because they did not discover their injury or its cause until 2009, when they realized they would be unable to make their mortgage payments. The argument is without merit. The terms of the loan were set forth in the deed of trust and adjustable interest rate rider, both of which plaintiffs expressly acknowledged they had read and accepted. That they did not fully appreciate the consequences of those terms does not mean they were unaware of them. The demurrer to these causes of action was therefore properly sustained.

## G.    Breach of the Loan Modification Agreement

Plaintiffs allege that Chase, by entering into the loan modification agreement, agreed not to institute foreclosure proceedings so long as plaintiffs paid $1,884 per month. Plaintiffs identify no such provision in the loan modification agreement. On the contrary, the agreement provided that the $1,884 payment was for a limited time only (consisting of four payments), which ended well before defendants instituted foreclosure proceedings.

## H.    Plaintiffs lack standing under Business and Professions Code section 17204

Under Business and Professions Code section 17204, to bring an unfair competition claim, a private individual must have "suffered injury in fact and . . . lost money or property *as a result of the unfair competition*." (Bus. & Prof. Code, § 17204, italics added.) Defendants argue plaintiffs lack standing to bring an unfair competition

9

claim because they failed to plead a causal link between their economic injury, the impending nonjudicial foreclosure of their home, and the unfair or unlawful acts allegedly committed by defendants. We agree.

Plaintiffs admit in their complaint and briefs that they defaulted on their loan. And it is indisputable their default triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was this event that subjected their home to nonjudicial foreclosure. Plaintiffs acknowledge that their default occurred prior to the unlawful or unfair acts they allege as the basis of their unfair competition claims. As their home was subject to nonjudicial foreclosure because of the default, which occurred before defendants' alleged wrongful acts, plaintiffs cannot assert the impending foreclosure was caused by the wrongful acts. Thus, even if we assume defendants committed at least one act constituting unfair competition (i.e., unlawful, unfair, or fraudulent conduct), plaintiffs cannot show the alleged violation caused their economic injury. Defendants' demurrer to plaintiffs' unfair competition cause of action was therefor proper. (See *Jenkins*, *supra*, 216 Cal.App.4th at pp. 522-523.)

## I.     Accounting, Injunction and Declaratory Relief

In their thirteenth cause of action, for an accounting, plaintiffs allege they do not know and defendants fail to disclose how much is owned under the loan. Defendants' demurrer to this cause of action in the first amended complaint was overruled, but their demurrer to it in the second cause of action was sustained.

An action for an accounting may be brought where a balance due from the *defendant* to the *plaintiff* can be ascertained only by an accounting. A complaint fails to state a cause of action where it shows on its face that no accounting is necessary, i.e., where the amount in dispute may be made certain by calculation. (*St. James Church of Christ Holiness v. Superior Court of Los Angeles County* (1955) 135 Cal.App.2d 352, 359 ["A suit for an accounting will not lie where it appears from the complaint that none is necessary"].) Here, the complaint shows no balance due from defendants to plaintiffs. On the contrary, it shows *plaintiffs* became indebted to their lender for a certain amount,

10

repayable at a specified rate of interest.  The amount at issue thus may be made certain by calculation.  Because it appears no complaint for accounting is necessary, the demurrer to this cause of action was properly sustained.

Given the foregoing, plaintiffs' cause of action for declaratory relief fails for lack of a predicate.

## DISPOSITION

The judgment is affirmed.  Respondents are to receive their costs on appeal.

NOT TO BE PUBLISHED.

CHANEY, Acting P. J.

We concur:

JOHNSON, J.

MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.