Filed 10/21/14  Raseknia v. County of Los Angeles CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOE RASEKNIA, | B246936 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC457999) |
| v. | |
| COUNTY OF LOS ANGELES et al., | **ORDER MODIFYING OPINION AND DENYING REHEARING** |
| Defendants and Respondents. | **[Change in Judgment]** |

THE COURT:[*]

It is ordered that the opinion filed herein on September 30, 2014, be modified as follows:

Page 14:  Delete the second paragraph of the Disposition relating to costs, and replace it with the following:  Each party to bear its own costs on appeal.

This modification does effect a change in judgment.

Respondents' petition for rehearing is denied.

_____

[*]      BOREN, P.J.          ASHMANN-GERST, J.          FERNS, J.[†]

[†]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 9/30/14  Raseknia v. County of Los Angeles CA2/2 (unmodified version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOE RASEKNIA, | B246936 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC457999) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Elizabeth Allen White, Judge.  Reversed and remanded.

Law Offices of Gloria Dredd Haney, Gloria Dredd Haney for Plaintiff and Appellant.

Peterson ● Bradford ● Burkwitz, Avi Burkwitz, Gil Burkwitz for Defendants and Respondents.

_____

Joe Raseknia (appellant) appeals from a summary judgment entered in favor of respondents, his employer, the County of Los Angeles (the county), and individual Francine Jimenez on his complaint for discrimination, harassment and retaliation in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code,[1] § 12900 et seq.). We reverse on the ground the trial court should have granted a continuance and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

**The Prior Action and Settlement**

Appellant is a deputy probation officer employed with the Central Adult Investigation (CAI) unit of the County's Probation Department. Appellant's current duties generally require him to compile reports relating to criminal defendants, which reports are submitted to criminal courts. Appellant's current position allows him to work remotely and/or to telecommute.

Appellant filed a prior lawsuit against the county in June 2008 for retaliation and discrimination based on race, national origin and ancestry in violation of the FEHA. The prior lawsuit alleged, among other things, that the county denied appellant promotions for which he was qualified because he was Persian and Jewish. Appellant alleged that he believed that the county did not accurately appraise whether he was promotable because he has Persian ancestry. By contrast, less qualified African-American females were receiving higher appraisals so they could be promoted. And, despite receiving high performance evaluations, during the promotion evaluations, he was denied promotions because of biased statements made about his interpersonal skills related to his Middle Eastern ancestry.

The prior lawsuit further alleged that appellant filed complaints regarding alleged discrimination with the Equal Employment Opportunity Commission (EEOC) in 2007 and with the California Department of Fair Employment and Housing (DFEH) in 2008.

---

[1] All further statutory references are to the Government Code unless otherwise specified.

2

Appellant also alleged that, after he filed the complaints, the Director of the Probation Department, Charlene Vartanian, retaliated against by harassing him and creating a hostile work environment.

In April 2009, while the prior lawsuit was pending, the Senior Director of the Probation Department, Tom Jeanneret, offered appellant a reassignment from Long Beach to the CAI unit, which appellant accepted.

On May 11, 2009, appellant underwent a Psychiatric Agreed Medical Examination in connection with a workers' compensation claim. The medical report indicated that appellant could not work under Vartanian's supervision. The report further stated that appellant should not be exposed to "undue stress above and beyond that which is to be expected for the duties" as a deputy probation officer. By the time the report was generated in May 2009, appellant had been moved to CAI and was no longer working under Vartanian's supervision.

Appellant also had physical work restrictions, which were issued in connection with an unrelated workers' compensation claim. The restrictions were in place several years prior to 2009. The physical work restrictions included: no driving over 20 to 25 miles, limited typing, 25-minute limits on sitting behind a desk, and access to stretching his neck, back and arms as needed.

Also in May 2009, after appellant was transferred to CAI, Robert Smythe, the Deputy Director of Administration for the Probation Department, objected to the transfer on the ground that it failed to comply with the "bid process" of the employee memorandum of understanding. Smythe ordered Jeanneret to tell appellant to report back to Long Beach. After appellant filed a grievance, the May 2009 transfer order was rescinded.

In June 2009, Jeanneret told appellant that appellant had to transfer from CAI and report to the Rio Hondo area office. The June 2009 transfer order was subsequently rescinded.

Appellant was told on October 30, 2009 and November 17, 2009, that he was being transferred out of CAI and back to Long Beach. The transfer orders were rescinded

after appellant filed a grievance. None of the attempts to transfer appellant out of the CAI assignment ever took effect.

On February 15, 2010, the parties entered into a settlement agreement which required appellant to dismiss the prior lawsuit and the county to pay $20,000 to appellant. The settlement agreement contained a waiver of the rights and benefits of Civil Code section 1542. The settlement agreement included the following: "[Appellant] agrees to dismiss and waive any claim against the County or its agents, not included in this complaint case number BC3292940, related to any possible known or unknown claim related to the allegations of this complaint except for [appellant's] workers compensation claims."

In May 2010, appellant filed a DFEH complaint citing the 2009 attempted transfers. On March 10, 2011, respondents conducted an interactive process meeting, which prompted the current lawsuit.

**The Current Action**

Appellant filed the current action on June 1, 2011, naming as defendants the county and Jimenez. Appellant alleged that respondents discriminated against him, harassed him and retaliated against him for engaging in the protected activity of opposing unlawful employment actions. Respondents continuously humiliated and embarrassed him, causing him to lose self-esteem due to threats and harassments about appellant's job responsibilities and assignment. Each time appellant settled into his position at CAI, which was an accommodation, respondents ordered him to leave CAI. There was a continued hostile work environment for appellant because he feared on a daily basis what would happen to him.

The first amended complaint cited allegations from the prior lawsuit, including discrimination after he was not promoted in 2001, 2004, and 2007 based on appellant's race/ethnicity/national origin. The prior lawsuit also alleged that his employer then retaliated against appellant for filing a discrimination claim with the EEOC in 2007. In 2009 after appellant was transferred to CAI to accommodate medical restrictions, Smythe

4

ordered that appellant be transferred on May 28, June 17, and October 30, 2009, in violation of the accommodations.

The first amended complaint alleged, that, in January 2011, Jimenez again attempted to transfer appellant. Appellant alleged that the March 10, 2011 interactive meeting was supposed to be conducted to discuss any accommodations needed for appellant's medical restrictions. But, Jimenez used the meeting to question appellant's integrity and raise the issue of appellant's prior lawsuit. The director of the Long Beach office made it clear during the meeting that she did not want appellant in her unit. While appellant was in Long Beach under Director Vartanian's supervision, appellant was isolated and ignored by his colleagues because of the prior lawsuit.

Appellant also alleged that Jimenez sent him a letter dated March 25, 2011, which stated he no longer was in need of accommodation. The letter was discriminatory and retaliatory in order to harass him and take away his accommodation. On May 2, 2011, appellant was threatened that he was subject to discipline as a result of the March 10, 2011 interactive meeting.

The first amended complaint contains nine causes of action: retaliation (§ 12940, subd. (h))(first); race/ethnicity discrimination (second); age discrimination over the age of 40 (third); disability discrimination (fourth); harassment against Jimenez (fifth); failure to accommodate (sixth); failure to prevent workplace discrimination (seventh); harassment (eighth) and discrimination based on religion (ninth).

**Summary Judgment/Summary Adjudication of Issues**

On September 24, 2012, respondents filed a motion for summary judgment or in the alternative for summary adjudication of issues, which was set for hearing on December 5, 2012. Respondents asserted the majority of the allegations in the first amended complaint are barred by the February 2010 settlement agreement. The discrimination causes of action (first through fourth) failed because appellant did not suffer any adverse employment action and any action taken by the county regarding appellant's employment was supported by legitimate business reasons.

5

Respondents also asserted that the retaliation cause of action (first) failed because there was no causal connection between any protected activity and any alleged adverse employment action. The race, age, disability and religious discrimination causes of action (second through fourth and ninth) failed because there were no allegations which show that appellant was discriminated against for those reasons. Appellant's only evidence on the discrimination claims was that two other employees, one of whom is African-American and the other Hispanic, were not subjected to multiple attempts to transfer them back to their previous work assignments. However, there is no evidence of discrimination based on race, age, or disability.

Respondents asserted appellant could not prevail on the harassment causes of action (fifth and eighth) because appellant could not show any severe or pervasive conduct. In addition, personnel management actions do not apply to the harassment framework under case law. Appellant cannot establish that any alleged harassment was carried out because of a protected characteristic. And, Jimenez was entitled to immunity under sections 820.2 and 821.6.

Respondents asserted that they should prevail on the failure to accommodate cause of action (sixth) because appellant received an accommodation. The claim was also barred by the settlement agreement, the statute of limitations and appellant's failure to exhaust administrative remedies.

Appellant could not prevail on the failure to prevent discrimination cause of action (seventh) because there was no underlying discrimination.

**Appellant's Request for a Continuance**

On November 21, 2012, two days before the opposition to the summary judgment was due, appellant filed an ex parte request to continue the December 5, 2012 hearing and the trial date of January 9, 2013. Appellant's counsel filed a declaration which outlined reasons for the continuance request. Among the reasons was the need to conduct additional discovery. Counsel declared that she needed a continuance in order to compel the deposition of respondents' counsel, Avi Burkwitz, as to the extent of the February 2010 settlement agreement.

6

Counsel also declared that she needed a continuance to depose appellant's expert, Dr. Jeffrey Bone, about two supplemental psychological reports issued on January 18, 2011 and November 7, 2011, and reports in 2012 concerning the effects of threats to transfer appellant back to the Long Beach office. The evidence would refute the claims that there were no adverse actions taken again appellant.

Appellant claimed that the deposition of Dwight Thompson, the Field Vice President for Local Union 685, was necessary because he attended the March 10, 2011 interactive meeting and would provide evidence as to the purpose of the meeting. Thompson would also provide evidence concerning the threats of discipline made against appellant and Thompson during and after the interactive meeting. Because he is a union officer, Thompson could testify or identify similarly situated employees by age/race/ethnic origin and disability.

The deposition of Dave Leone, the Acting Deputy Director of the Field Services Division for the Probation Department, was needed because he was willing to provide a declaration/evidence that Jimenez was determined to force appellant back to the Long Beach office. And, that there was no legitimate business reason to do so. Leone could testify or identify similarly situated employees by race/ethnic origin and disability.

Counsel declared that she had not been able to respond appropriately to the summary judgment motion because her father suffered from Alzheimer's and she was his primary caretaker. In September 2012 after she was served with summary judgment, his condition worsened to point that she was at a crisis level. In addition, another family member, who depended on counsel, had cancer. Counsel had not been able to focus on the opposition and discovery matters as she had done earlier in the year. Counsel then listed discovery she had conducted earlier in the year and the existence of outstanding discovery she had served on November 5, 2012. In addition, she and union counsel had been attempting to find a date to depose Thompson.

Respondents opposed the ex parte application to continue the hearing on the summary judgment motion on the grounds: a motion to compel is not a proper matter for an ex parte application; respondents filed a protective order request after appellant served

7

notice of intent to depose counsel; and the subject matter of the proposed deposition of respondents' counsel is privileged. Respondents also argued that the request failed to show that appellant acted with reasonable diligence in obtaining the discovery. The complaint was filed in June 2011. The summary judgment motion was filed in September 2012. The request for a continuance was made two months later and two days before the opposition was due. No explanation was offered as to why the requested discovery was not conducted prior to that time.

The trial court denied the ex parte application on November 21, 2012. Appellant filed opposition to the summary judgment motion on November 26, 2012, in which he renewed his request for a continuance.

**Evidence from the Separate Statements**

With noted exceptions, the parties agreed that the following facts were not disputed. In May 2009, after appellant was transferred to CAI, Smythe objected to the transfer on the ground that it failed to comply with the "bid process" of the employee memorandum of understanding. Appellant claimed that Smythe's objection was not valid because the transfer had been approved by the Chief of the Probation Department, as well as the union.

In May 2009, Smythe ordered Jeanneret to tell appellant to report back to Long Beach. The parties dispute whether, at the time Smythe made the decision to rescind appellant's reassignment to CAI, Smythe was aware of the details regarding appellant's prior lawsuit, including work restrictions and appellant's Middle Eastern and Jewish heritage. According to appellant, Smythe would have known because his subordinate, Jimenez, conducted the investigation of the FEHA complaint, which was the basis of appellant's prior lawsuit. Jimenez was also the coordinator for compliance with the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) (ADA) and was aware of appellant's work restrictions. Although Smythe was never involved with appellant's daily work and work performance, his subordinate, Jimenez, investigated appellant's claims. After appellant filed a grievance, the May 2009 transfer order was rescinded.

8

In June 2009, Jeanneret told appellant that appellant had to transfer from CAI and report to the Rio Hondo area office. The June 2009 transfer order was subsequently rescinded.

Appellant was told on October 30, 2009 and November 17, 2009, that he was being transferred out of CAI and back to Long Beach. The transfer orders were rescinded after appellant filed a grievance. None of the attempts to transfer appellant out of the CAI assignment ever took effect. However, appellant argued that the continuing attempts to send him back to the Long Beach office exacerbated his disability. Appellant raised the issue of the attempted transfers in the prior lawsuit in opposition to the summary judgment motion.

Appellant admitted at his deposition that he was not aware of any work restrictions, which specifically required him to be assigned to CAI instead of another county facility.

On February 15, 2010, the parties entered into a settlement agreement which required appellant to dismiss the prior lawsuit in exchange for $20,000. The settlement agreement contained a waiver of the rights and benefits of Civil Code section 1542. The settlement agreement included the following: "[Appellant] agrees to dismiss and waive any claim against the County or its agents, not included in this complaint case number BC3292940, related to any possible known or unknown claim related to the allegations of this complaint except for [appellant's] workers compensation claims." Appellant admitted that the first instance of alleged improper behavior, which occurred after the February 2010 settlement agreement was executed, occurred in a March 2011 interactive process meeting.

Appellant's May 2010 DFEH complaint caused the county's Office of Affirmative Action Compliance (OAAC) to begin an investigation into the allegations of the complaint. According to Jimenez, in December 2010, an investigator from the OAAC contacted her for information about appellant's claims. Jimenez's position as an ADA coordinator required that she investigate alleged policy violations based on disabilities. Respondents claim that based on appellant's assertion in the 2010 DFEH compliant that

9

the employer failed to accommodate his disability, Jimenez referred the matter to her supervisor for guidance on how to proceed. Respondents produced evidence that an interactive process meeting was needed to discuss what accommodations appellant needed.

Appellant filed a declaration which stated the interactive process meeting was called for the purpose of harassing him and to threaten him with discipline. The meeting was held on March 10, 2011. Among those attending the meeting were appellant, his attorney, a union representative, a return-to-work coordinator, Jimenez and the Director. In addition, appellant argued that, because he had named Jimenez in the DFEH complaint, the county had a duty to have a different person investigate his claims. Jimenez conducted the investigation and "then took away" appellant's need for an accommodation because appellant engaged in a protected activity and for the purpose of continuing to harass appellant. Appellant noted that his treating physician had never indicated that appellant did not need an accommodation.

The parties dispute what occurred at the meeting. Respondents assert that Jimenez attempted to advise appellant that the purpose of the March 10, 2011 meeting was to see if his work restrictions were being met. But, the tenor of the meeting became contentious and resulted in appellant's union representative using profanities. Appellant also accused Jimenez of harassing him.

Appellant declared that, during the meeting, he was harassed regarding his previous complaints of discrimination and his previous lawsuit. He denied that his union representative used profanity.

The parties also disputed what occurred during and after the meeting regarding appellant's need for an accommodation under the ADA. Respondents claimed appellant admitted that his work restrictions were being accommodated at CAI. Appellant admitted in his deposition that the issue of transferring him to Long Beach was not raised in the meeting. He also admitted that Jimenez never told him that he did not qualify under the ADA. By contrast, appellant asserted that Jimenez indicated that he no longer needed an accommodation even though his treating physician had not changed the need

10

for one.  Appellant cited a letter sent by Jimenez dated March 25, 2011, which he claims falsely stated that he did not need an accommodation under the ADA.  The letter provides:  "During the 'Interactive Process Meeting' held on March 10, 2011, you confirmed that currently, you are not in need of accommodation under the ADA (Americans with Disabilities Act) through my office.  As such, I will close my file effective immediately.  [¶]  If in the future you are in need of accommodation, please contact me . . . ."

None of the attempts to transfer appellant out of the CAI assignment ever took effect.  However, appellant argued that the continuing attempts to send him back to the Long Beach office exacerbated his disability.

In addition, since his reassignment, appellant has never received any substandard performance evaluations, criticisms of his work, suspensions, or letters of reprimand or warning.  The CAI assignment accommodates his work restrictions.  Appellant does not have any complaints with his current assignment.

On December 5, 2012, the trial court denied appellant's renewed request for a continuance.  The trial court then summarily adjudicated each of the causes of action in favor of respondents and granted summary judgment.  On January 25, 2013, the trial court denied appellant's motion for new trial.  Appellant filed a timely notice of appeal from the judgment.

## DISCUSSION

Appellant claims the trial court erred in denying his request for a continuance. Code of Civil Procedure section437c, subdivision (h) provides:  "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just.  The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

11

Code of Civil Procedure section 437c, subdivision (h) was enacted "'"'[t]o mitigate summary judgment's harshness'"'" as to "'an opposing party who has not had an opportunity to marshal the evidence.' [Citation.]" (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 253.) There is a conflict in the law as to whether a continuance is mandated if the affidavit requesting the continuance meets the requirements of Code of Civil Procedure section 437c, subdivision (h). (Compare *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038, fn. 7 [continuance is not mandated by the terms of the statute given the words granting the trial court authority to "make any other order as may be just" (Code Civ. Proc., §437c, subd. (h)) contemplating an exercise of discretion including reasonable or lack of diligence] with *Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 532 [continuance must be granted when good faith showing is made by affidavit that a continuance is necessary to obtain essential facts to oppose summary judgment motion], *Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1427 [same].) In any event, the declaration or affidavit must detail specific facts which would establish the existence of material controverting evidence. (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 715.)

In this case, appellant's counsel presented a declaration which showed that she needed to conduct additional discovery as to at least three witnesses: Dr. Bone, Thompson, and Leone. Dr. Bone would present evidence concerning the effects of continued threats against appellant. Thompson, who attended the interactive process meeting as appellant's union representative, would provide evidence of threats made during and after the meeting. Leone, who was the Acting Director during pertinent times, would describe Smythe's conduct and the absence of a legitimate business reason for continuing to threaten appellant with transfers. Counsel's declaration showed that plaintiff may discover evidence pertinent to his claims concerning the purpose, nature and result of the March 2011 interactive process meeting. Specifically, appellant claimed that the meeting involved continued threats about transferring him from CAI as well as threats of discipline. Appellant also asserted that, notwithstanding his need to continue

12

his stress and physical accommodations, Jimenez claimed he no longer needed any accommodations.

In addition, counsel listed discovery she had conducted earlier in the year and the existence of outstanding discovery she had served on November 5, 2012. Counsel also declared that she and union counsel had been attempting to find a date to depose Thompson. Thus, counsel's declaration showed a justification for the continuance by showing the facts expected to be discovered and how the evidence would be used. Because counsel identified the specific issues that the witnesses would testify to and how the evidence was needed to meet appellant's summary judgment burden, the trial court should have granted a continuance under Code of Civil Procedure section 437c, subdivision (h).

Even if the continuance was not mandatory, counsel also requested additional time to respond to the summary judgment motion under the trial court's broad discretionary power. We review the denial of such a request for an abuse of discretion. (*Johnson v. Alameda County Medical Center*, *supra*, 205 Cal.App.4th at p. 532.) Counsel identified personal circumstances which precluded her from responding properly to the summary judgment motion in a timely manner. Counsel requested additional time due to responsibilities surrounding her father's Alzheimer's condition. At the same time, counsel was required to care for a family member who had cancer. Here, the medical conditions of two people, who relied on counsel for their care, was good cause for at least a short continuance. (See Cal. Rules of Court, rule 3.1332(c)(3) [illness is a circumstances that may indicate good cause]; *Lerma County of Orange*, *supra*, 120 Cal.App.4th at p. 716.)

## DISPOSITION

The summary judgment is reversed.  The matter is remanded to the trial court for further proceedings without prejudice to respondents' filing a motion for summary judgment and/or summary adjudication of issues.

Appellant is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


FERNS, J.*

We concur:


BOREN, P.J.


ASHMANN-GERST, J.

_____

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.