[No. G044118. Fourth Dist., Div. Three. Nov. 23, 2011.]

WON SHIL PARK, Plaintiff and Appellant, v.
FIRST AMERICAN TITLE COMPANY, Defendant and Respondent.

## Counsel

David D. Kim & Associates, David D. Kim and Mark M. Higuchi for Plaintiff and Appellant.

Garrett & Tully, Ryan C. Squire and Anna Didak for Defendant and Respondent.

**OPINION**

**FYBEL, J.—**

INTRODUCTION

Won Shil Park sued First American Title Company (First American) for mishandling the preparation of a deed of trust on a property Park sold. First American's motion for summary judgment was granted on the ground Park could not prove damages.

Park's opposition to the motion did not raise a triable issue of material fact. The trial court did not err in sustaining certain evidentiary objections or in denying Park's request to continue the hearing on the motion. We therefore affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Park owned real property in Fresno, California. In March 2006, she sold the property for $7.3 million, taking back a second deed of trust securing a purchase money note in the amount of $2.45 million. First American, the escrow holder for the transaction, prepared the grant deed, the purchase money note, and the deed of trust securing Park's note. The buyers failed to make payments on Park's note, and, in September 2006, at Park's request, First American prepared a notice of default.

In late December 2006, First American informed Park that the deed of trust contained a defect, in that it named the individual buyers as trustors, while the grant deed identified the buyers' corporation as the entity holding title to the property. First American assured Park it had the authority to proceed with a scheduled trustee's sale despite the defect in the deed of trust. First American nevertheless encouraged Park to accept an offer by the buyers to a stipulated reformation of the deed of trust in exchange for a rollover of the unpaid balance of the note, and an extension of the note's term. On February 13, 2007, Park refused the buyers' rollover offer, and proceeded with the trustee's sale, scheduled for February 23.

On February 15, 2007, Park's attorney was informed by First American's vice-president and regional counsel that First American did not have the authority to proceed with the trustee's sale, and the deed of trust would have to be reformed. After the reformation was complete, First American restarted the foreclosure procedures, and scheduled a trustee's sale for July 24, 2007. The buyers filed for bankruptcy one day before the scheduled sale, causing the trustee's sale to be cancelled again. The bankruptcy was dismissed in May 2008.

When the trustee's sale was finally held in April 2008, there were no buyers willing to purchase the property, and Park made a full credit bid for the property. Park also used her own assets to acquire title from the first trust deed holder at another trustee's sale.

Park sued First American for negligence, fraud, and breach of fiduciary duty. First American filed a motion for summary judgment. The trial court granted First American's motion, judgment was entered, and Park appealed.

DISCUSSION

I.

*SUMMARY JUDGMENT*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

First American moved for summary judgment, in part, on the ground that Park could not establish damages, because there was no triable issue of material fact regarding the existence of a bona fide purchaser at the time of the noticed February 2007 foreclosure sale. First American's separate statement set forth as undisputed facts that Park had not identified any ready, willing, and able buyers who could and would have purchased the property had the foreclosure sale occurred as originally noticed in February 2007.[1]

Park opposed the motion, claiming there were triable issues of material fact regarding the alleged lack of damages: "Plaintiff has identified Ms. Si Oak Kim, a bona fide purchaser who was ready, willing, and financially able to purchase the property at a trustee's sale held in 2007, or at a subsequent sale in 2007, for a purchase price of up to $6.8 million." In opposition to the motion, Park submitted her own declaration, and the declarations of her

---

[1] Undisputed fact No. 46 of First American's separate statement reads as follows: "[P]laintiff failed to identify any prospective buyers who made bona fide purchase offers." Undisputed fact No. 47 reads as follows: "Plaintiff has also failed to produce any documents identifying prospective purchasers for the trustee's sale scheduled for February 23, 2007 despite requests for such documents." Finally, undisputed fact No. 56 reads as follows: "[P]laintiff never identified those prospective buyers [(represented by licensed real estate brokers expressing interest in acquiring the subject property)] in her discovery responses nor did she identify them in her deposition."

attorney, David Kim (Attorney Kim), and Eui Rak Kim, a real estate broker who had represented potential buyers interested in the property (the broker). Park stated in her declaration that she "had numerous prospective buyers represented by licensed real estate brokers expressing interest in acquiring the property," and that she had "recently learned the identity of one such buyer to have been Ms. Si Oak Kim, represented by a real estate agent by the name of Mr. Eui Rak Kim." In the broker's declaration, he stated that he "had a number of buyers interested in the [p]roperty," and that Si Oak Kim (the prospective buyer) "was prepared to pay up to $6.8 million for the [p]roperty."

First American objected to the following statement from Attorney Kim's declaration: "[The broker] confirmed the existence of numerous buyers for the property in 2007 and identified one such buyer as [the prospective buyer]." First American also objected to the following paragraph from the broker's declaration: "Among those buyers, [the prospective buyer] was the one who was a ready, willing and financially able buyer who was intent on purchasing the [p]roperty because she was looking for a property that would enable her to obtain a permanent resident status in the United States. As a successful developer in South Korea, she was very interested in the [p]roperty because of the large vacant lot that was part of the [p]roperty, which she planned on developing." First American's objections were based on the grounds of lack of personal knowledge, lack of foundation, assumption of facts not in evidence, and hearsay. The trial court sustained First American's objections.

The trial court's minute order granting the motion for summary judgment reads, in relevant part, as follows: "Defendant met its initial burden of proof and Plaintiff failed to present admissible evidence of the existence of a bona fide purchaser at the time Plaintiff initially desired to foreclose. Disputed Facts 46, 47 and 56 reference supporting evidence. Plaintiff cannot make out the element of damages to support any of the claims."

On appeal, Park argues her declaration and the admitted portions of the broker's declaration created a triable issue of material fact. Park also argues the trial court erred in sustaining the evidentiary objections to the declarations of Attorney Kim and the broker. Finally, Park argues that if the evidence she presented was insufficient, the court should have granted her request for a continuance to permit her to obtain a declaration from the prospective buyer. We address each argument in turn.

## II.

### THE TRIAL COURT DID NOT ERR IN DETERMINING PARK HAD FAILED TO SHOW THE EXISTENCE OF A TRIABLE ISSUE OF MATERIAL FACT.

■ The parties agree that the issue before the trial court was whether Park had presented admissible evidence that there was at least one ready, willing, and able buyer who would have purchased the property but for the delay in the foreclosure proceeding resulting from the error in the deed of trust. The trial court did not err in granting the motion for summary judgment because Park did not establish the existence of a triable issue of disputed material fact regarding (1) a contract between herself and a potential buyer, or an offer from a potential buyer, to purchase the property on Park's terms, or (2) any potential buyer who had the financial ability to satisfy Park's terms. The parties agree that a ready, willing, and able buyer was required to prove damages. As we describe, the law so requires.

### A. Contract or Offer to Purchase

■ " 'In this state it is well established, in the absence of any specific agreement to the contrary, that a broker employed to sell real or personal property has earned his commission when . . . he has produced a person who is ready, willing, and able to purchase the property on terms satisfactory to the seller, and has obtained a binding and valid contract for a sale on the terms proposed by the seller, or has brought the seller and buyer together and thus enabled them to enter into a contract of sale, or has produced such a purchaser who has verbally accepted the seller's terms and offered to enter into a written contract embodying the said terms and binding upon both parties. . . .' [Citation.]" (*R. J. Kuhl Corp. v. Sullivan* (1993) 13 Cal.App.4th 1589, 1600 [17 Cal.Rptr.2d 425].) Nonbinding, preliminary communications between a broker and a potential buyer are insufficient (*Mattingly v. Pennie* (1895) 105 Cal. 514, 519 [39 P. 200]), as is a memorandum of price between a buyer and a seller intended as a basis for future negotiations. (*Massie v. Chatom* (1912) 163 Cal. 772, 775–776 [127 P. 56].) The contract or offer must be provided to the seller, not merely the seller's broker. (*Hicks v. Christeson* (1917) 174 Cal. 712, 717–718 [164 P. 395].)

■ In a different context, a junior lienholder alleging a senior lienholder's interference with a foreclosure sale resulting in loss of profits to the junior lienholder must show that a buyer would have purchased the property but for the interference. "In order to prove it was damaged by the irregularities in the foreclosure sale which dissuaded or prevented a higher bid, the junior lienor would have to produce a ready, willing and able buyer who would have paid the higher price but for the wrongful conduct. Otherwise, damages alleged would be speculative." (*FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989)

207 Cal.App.3d 1018, 1023 [255 Cal.Rptr. 157].) Proof that a buyer was present at the foreclosure sale with a cashier's check, "ready to purchase the property," is sufficient. (*South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.* (1999) 72 Cal.App.4th 1111, 1123 [85 Cal.Rptr.2d 647].)

The need to prove an existing relationship with an identifiable buyer in a case of tortious interference with prospective economic advantage is analogous to the need to prove the existence of a ready, willing, and able buyer in the present case. In *Lowell v. Mother's Cake & Cookie Co.* (1978) 79 Cal.App.3d 13, 19 [144 Cal.Rptr. 664], the plaintiff decided to sell his trucking company and received several offers, including an offer for $200,000 conditioned on the company's continued business with a major client. The client, hoping to purchase the trucking company itself at a lower price, told the buyer it would cease doing business with the trucking company if the sale became final, forcing the plaintiff to sell his company to the major client for around $17,000. (*Ibid.*) A later case, *Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 528 [49 Cal.Rptr.2d 793], identified *Lowell* as an example of factual allegations that, "if proven, were sufficient to show with a reasonable degree of certainty both that there were several actual buyers for the company and the amounts they were willing to pay." In contrast to *Lowell*, in *Westside Center Associates*, a supermarket lessee closed its store in a shopping center but renewed the lease on the empty store, hoping to purchase the property from the shopping center owner at a reduced price in the future. (42 Cal.App.4th at p. 510.) The owner sued the supermarket for interfering "in its relationship with the class of all potential buyers . . . [o]r . . . interfer[ing] not with a particular sale but with [the owner]'s 'opportunity' to sell the property for its true value." (*Id.* at p. 523.) The appellate court upheld the judgment against the owner, reasoning "[w]ithout an existing relationship with an identifiable buyer, [the owner]'s expectation of a future sale was 'at most a hope for an economic relationship and a desire for future benefit.' [Citation.]" (*Id.* at p. 527.) "The problem with [the] 'lost opportunity' approach is that it allows recovery no matter how speculative the plaintiff's expectancy" and "assumes what normally must be proved, i.e., that it is reasonably probable the plaintiff would have received the expected benefit had it not been for the defendant's interference." (*Id.* at p. 523.)

### B. *Financial Ability of the Buyer*

■ "That [the buyers] may have been ready and willing to buy is not enough. There must have been ability to pay and the burden is on the broker to show the financial ability of his vendees." (*Herring v. Fisher* (1952) 110 Cal.App.2d 322, 327 [242 P.2d 963]; see *Phelan v. Hilda Gravel Min. Co.* (1928) 203 Cal. 264, 268 [263 P. 520].)

A buyer's financial ability may be established through many means. (See *Behniwal v. Mix* (2005) 133 Cal.App.4th 1027, 1044–1045 [35 Cal.Rptr.3d 320] [prior preapproval for loan and family member's promise to assist with deposit sufficient to show financial ability where preapproval expired and deposit was spent on litigation]; *South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc., supra*, 72 Cal.App.4th at p. 1123 [triable issue as to damages where buyer was present at foreclosure sale with cashier's check]; *Henry v. Sharma* (1984) 154 Cal.App.3d 665, 672 [201 Cal.Rptr. 478] [loan approval demonstrates financial ability].)

### C. Park Failed to Establish the Existence of a Triable Issue of Material Fact.

As noted *ante*, First American met its initial burden of showing that the element of damages could not be established, shifting the burden of production to Park. However, the declarations submitted by Park in opposition to the motion for summary judgment failed to set forth evidence showing that a triable issue of material fact existed as to the element of damages.

As discussed *ante*, Park was required to show a potential buyer was ready, willing, and able to purchase the property. Neither Park's nor the broker's declaration showed the prospective buyer made an offer, entered into a contract of sale, obtained a cashier's check, or took any equivalent step that would have demonstrated she was ready, willing, and able to purchase Park's property. The broker's statement that the prospective buyer "was prepared to pay up to $6.8 million for the [p]roperty" did not meet these requirements.

Notably, the declarations of Park and the broker failed to show the prospective buyer was financially able to purchase the property. The broker declared the prospective buyer "was prepared to pay up to $6.8 million for the [p]roperty." He did not assert that the prospective buyer had obtained financing for the sale or preapproval for a loan. Neither did he state that the prospective buyer had sufficient funds to purchase the property in cash. In any event, a broker's statement that its client is "prepared to pay up to" a given amount is only a statement of a professional opinion about what the property would be worth to a client and does not amount to a declaration of financial status. (See generally *Diamond v. Fay* (1913) 23 Cal.App. 566, 569 [138 P. 933] [broker's verbal statement that potential buyer was "worth twenty thousand dollars or twenty-five thousand dollars," in the absence of requested written verification, was not evidence of potential buyer's financial ability].) Here, the broker did not establish preapproval of a loan, a bank account statement, or a cashier's check, any of which may have satisfied Park's burden regarding the prospective buyer's financial ability.

## III.

### THE TRIAL COURT DID NOT ERR IN SUSTAINING FIRST AMERICAN'S OBJECTIONS TO PORTIONS OF THE DECLARATIONS OF ATTORNEY KIM AND THE BROKER.

We review the trial court's evidentiary ruling for abuse of discretion. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [23 Cal.Rptr.3d 915].) In doing so, we review "the ruling, not the rationale." (*Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376 [63 Cal.Rptr.2d 522].) "[T]he testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).) Hearsay evidence is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (*Id.*, § 1200, subd. (a).) The broker's statement that the prospective buyer was "ready, willing and financially able" was a legal conclusion based either on his speculative opinion as her broker, or on the prospective buyer's out-of-court statement to the broker. In either case, the objection was properly sustained. Attorney Kim's declaration regarding the prospective buyer was even more removed from the broker's declaration, and First American's objection to Attorney Kim's declaration was also properly sustained.

Even if the trial court erred in sustaining the objections, the error was harmless. Neither Attorney Kim's nor the broker's declaration shows the existence of a contract of sale or an offer to purchase the property, nor does either show the prospective buyer's financial ability to purchase the property at any specific price.

## IV.

### THE TRIAL COURT DID NOT ERR IN REFUSING PARK'S REQUEST TO CONTINUE THE SUMMARY JUDGMENT HEARING.

Park argues that if she failed to offer sufficient evidence to establish a triable issue of material fact as to the existence of a bona fide purchaser for the property, the trial court should have granted her request for a continuance of the hearing on the summary judgment motion to obtain a declaration from the prospective buyer. "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due." (Code Civ. Proc., § 437c, subd. (h).)

■ When a party makes a good faith showing by affidavit demonstrating that a continuance is necessary to obtain essential facts to oppose a motion for summary judgment, the trial court must grant the continuance request. (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395 [107 Cal.Rptr.2d 270].) "Continuance of a summary judgment hearing is not mandatory, however, when no affidavit is submitted or when the submitted affidavit fails to make the necessary showing under [Code of Civil Procedure] section 437c, subdivision (h). [Citations.] Thus, in the absence of an affidavit that requires a continuance under section 437c, subdivision (h), we review the trial court's denial of appellant's request for a continuance for abuse of discretion." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254 [19 Cal.Rptr.3d 810].)

Although the trustee's sale occurred in April 2008, Park did not attempt to obtain the identities of any prospective buyers until January 2010, when Attorney Kim left a voice mail message for the broker. The voice mail message was not returned until May 3, 2010; Attorney Kim did not provide any information about other attempts to identify any prospective buyers during the intervening four months. Park also does not explain why she did not request a continuance in an affidavit or declaration when she filed her opposition to the summary judgment motion on May 21, 2010, rather than waiting to make an oral request for a continuance at the hearing on June 4, 2010. The trial court did not err in denying the request to continue the hearing.

## DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

Bedsworth, Acting P. J., and Ikola, J., concurred.