Filed 2/29/16  Kling v. Farmers Ins. Exchange CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ANTHONY N. KLING, as TRUSTEE of the ANTHONY N. KLING TRUST of 1997,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>FARMERS INSURANCE EXCHANGE,<br><br>Defendant and Respondent. | B260738<br><br>(Los Angeles County<br> Super. Ct. No. SC115299) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard A. Stone, Judge.  Affirmed.

Law Offices of David C. Knieriem and David C. Knieriem for Plaintiff and Appellant.

HollinsLaw, Andrew S. Hollins and Kathleen Mary Kushi Carter for Defendant and Respondent.

## SUMMARY

In December 2011, an insured owner of real property sued a first party commercial property insurer, alleging breach of contract, breach of the covenant of good faith and fair dealing, and seeking declaratory relief and punitive damages after the insurer refused to cover significant damage to the insured's commercial buildings caused by negligent subterranean construction on an adjoining property. The insurer claimed the insured was or should have been aware of appreciable damage to the insured property but no later than July 2008, but failed timely to notify the insurer or to file suit within the policy's two-year contractual limitations provision.

The trial court granted summary judgment in favor of the insurer on the ground that the evidence on which the insured principally relied in opposing the summary judgment motion (his declaration) was factually inconsistent with his prior pleadings, testimony and discovery responses, all of which demonstrated that the insured knew by 2008 that at least one insured structure had suffered appreciable damage. On appeal, the insured insists the court erred in granting summary judgment because there is no evidence he was aware of any appreciable loss to any insured structure before 2010 and, even if such evidence existed, the insurer is equitably estopped from asserting the contractual limitations bar. We disagree, and affirm the summary judgment entered in favor of the insurer.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Insurance Policy*

Defendant and respondent Farmers Insurance Exchange (Farmers) issued a Businessowners Policy (Policy) to Mary J. Kling, Trustee of the Family under the Heywood F. and Mary J. Kling Revocable Trust, dated July 28, 1987, and plaintiff and appellant Anthony N. Kling, Trustee of the Anthony N. Kling Trust of 1997,

2

dated November 26, 1997 (Kling). Subject to certain exclusions and limitations, the Policy provides "all risk" coverage for several commercial buildings owned by Kling located at 3115-3125[1] Santa Monica Boulevard, in Santa Monica (property).

The Policy provides that Farmers will "pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss," but excludes coverage "for loss or damage caused by or resulting from" among other things, "Settling, cracking, shrinking or expansion." "Covered Property" includes, "the buildings and structures at the premises . . . ," but does not include "Land (including land on which the property is located)" or "Outdoor fences." The Policy requires the insured promptly to notify Farmers in the event of loss or damage to covered Property, and requires that any legal action against Farmers based on the Policy be "brought within 2 years after the date on which the direct physical loss or damage occurred."

*Construction Excavation by Kling's Neighbor Causes Damage to Property*

In 2006, Joseph Hassid and other owners of real property located at 3107-3111 Santa Monica Boulevard, immediately west of and adjacent to Kling's property (collectively, Hassid), began work on a large commercial building project (Bay Cities), which included the excavation for and construction of a multi-level subterranean parking structure.

In January 2007, Kling observed cracking, settling and subsidence in parts of his property. He believed the damage and land movement was the result of inadequate, negligent excavation and shoring in connection with the subterranean

---

[1] At various spots in the record, the buildings are identified as either 3115-3125 or 3115-3123, and it is not clear whether there are five or six structures. None of this information is important for purposes of our analysis.

construction activity on the adjacent property. In January 2007, Kling retained Robert Zweigler (Zweigler), a geotechnical and civil engineer, "[t]o determine . . . the condition of [the Property], whether it had subsided due to [Hassid's construction project], where it had subsided, and what [Hassid's contractors] were still doing wrong in January 2007 to inform [them] to stop doing it." Several weeks later Zweigler verbally informed Kling that both past and ongoing improper shoring of the subterranean construction on the Hassid property had caused and was causing subsidence on Kling's property. Bill Lloyd (now deceased), the attorney then representing Kling, notified Hassid on Kling's behalf of the improper shoring.

Vida Hamadani is the Farmers insurance agent with whom Kling has dealt since 2002. In 2007, Kling told Hamadani about the excavation project on Hassid's adjacent parcel. He also told her that he had seen cracks in the patio, a crack in a retaining wall and some tilting and westward movement of a block wall on his own parcel. In 2007, Hamadani verbally informed Kling that the Policy excluded coverage for "soils, land, dirt, cracks" or damage caused by soil deterioration.

*Kling Sues Hassid*

On July 1, 2008, Kling filed a lawsuit against Hassid (*Hassid* Action). He sought damages for negligent construction activities which he alleged began prior to February 2007. Kling alleged that Hassid's failure to provide adequate lateral and adjacent support along the depth of Kling's property had caused damage to

4

structural components of the property, including its buildings and their foundations.[2]

*Kling Notifies Farmers of Damage to the Property*

Construction on the Hassid parcel remained ongoing in September 2010. During the last quarter of 2010 Kling noticed that pieces from a ceiling had fallen in at least one building. In 2011, ceilings began caving in after large portions of drywall fell from the ceilings in two rooms at 3115, and one in 3117. Ceiling plaster and drywall continued falling out throughout 2011. Kling claimed that, as the ceilings began caving in and the buildings shifted on their foundation, the City of Santa Monica informed him the structures had become unsound and had to be demolished and rebuilt.

On March 17, 2011, Kling submitted a claim for damage to the Property to Farmers. Kling reported that he first noticed the damage in 2007. He said it was likely due to soil problems resulting from improper shoring during negligent excavation work conducted by his neighbor which began in 2006 and remained ongoing.

On June 23, 2011, Farmers denied Kling's claim based on the two-year contractual limitations provision, which bars legal action under the Policy unless "brought within 2 years after the date on which the direct physical loss or damage occurred."

---

[2] Specifically, Kling alleged that, "during the aforesaid construction and continuing to date, support for the *structures* on the Kling property has been compromised to the point where there has been subsidence *under the building* adjacent the Bay Cities Property causing settling, *cracking of the foundation*, *cracking in the floor*, *cracking in the walls and other structural damage* which is as yet unknown, in part, because [Kling has] yet to remove the interior of the building to determine the whole of the damage." (Italics added.)

*Kling Sues Farmers, Which Moves for Summary Judgment*

On December 19, 2011, Kling filed the instant action against Farmers alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing and declaratory relief. Kling also sought punitive damages.

In due course, Farmers moved for summary judgment.[3] In support of its motion Farmers submitted, among other evidence, a request that the court take judicial notice of Kling's complaints in this and in the *Hassid* Action, declarations by Zweigler and the Farmers' Adjuster who handled Kling's March 2011 claim, excerpts from Kling's depositions in the *Hassid* Action and some of Kling's discovery responses in this litigation.

Farmers argued Kling's claim was time barred because he knew or had notice that the Property suffered appreciable damage well before September 14, 2009, the earliest point at which the date of inception of the loss could have occurred to have fallen within the two-year contractual limitations provision. Farmers argued that it was undisputed that, as early as 2007 and no later than 2008, Kling knew or strongly suspected that the dominant or efficient proximate cause of the damage to the Property was negligent excavation and shoring activity conducted on his neighbor's adjacent parcel. Because third party negligence is *not* excluded by Kling's "all risk" policy, he had a duty to report that third party negligence to Farmers by 2008, and to file suit by mid-September 2009. His failure timely to do so now barred coverage.

---

[3] Farmers also moved for summary adjudication on the punitive damages claim. That motion, which is not at issue, was later denied as moot.

6

The only evidence Kling submitted in opposition to the summary judgment motion was his own declaration (with attached exhibits), and the declaration of a structural engineer he retained in spring 2011 to review the Property. Kling argued in opposition to the summary judgment motion—as he does on appeal—that the Policy provides coverage only for the actual "structures" or "buildings" and that, apart from "one very slight paint crack" in the interior of 3115, he observed no damage to any building before 2010, only damage to non-covered portions of his property.

In its reply, Farmers argued Kling improperly had asserted an entirely new theory in opposition to the summary judgment motion than the one he had pled and relied upon to prosecute the litigation. Specifically, Farmers argued that, before it filed the summary judgment motion, Kling consistently had argued that the contractual limitations period did not bar his lawsuit because the initial damage of which he had concededly been aware fell within the Policy's "settling, cracking, shrinking and expansion" exclusion, and it was only when that damage progressed to the point that parts of the buildings began to collapse that the two-year limitations period began to run. Now, however, in opposition to the summary judgment motion, Kling suddenly was arguing that the initial (excluded) damage of which he had admittedly been aware occurred only on "non-covered portions" of his land. He asserted that the Policy covered only damage to the buildings, not any of the damage he had begun seeing in 2007 to outdoor spaces and structures, i.e., cracks in the concrete patio and retaining wall and fence. Except for "one very slight paint crack" inside 3115, Kling claimed not to have seen any damage in or outside any building before 2010.

Farmers argued that Kling was impermissibly attempting to change his theory in response to the summary judgment motion to circumvent the otherwise unavoidable conclusion that he was or should have been aware of appreciable

7

damage to at least one building caused by Hassid's negligent excavation work no later than 2008. Farmers lodged objections to the evidence Kling submitted in support of his opposition, taking particular issue with Kling's declaration. Farmers pointed to numerous inconsistencies between the factual assertions in that declaration and Kling's discovery responses in this action, and his pleading and deposition testimony in the *Hassid* Action.

Kling filed a response to Farmers' evidentiary objections and, without obtaining leave to do so filed a sur-reply, which the court nevertheless considered in ruling on the summary judgment motion.

*The Court's Ruling*

On June 12, 2014, following oral argument, the trial court announced its intent to adopt as final its previously announced tentative ruling. Subject to its subsequent ruling on modified evidentiary objections to be submitted,[4] the court granted Farmers' motion for summary judgment on the ground that Kling had failed to raise a triable issue of material fact with regard to his failure to adhere to the Policy's two-year contractual limitations period. In short, the court found that Kling knew or should have known that at least one of the covered buildings had suffered appreciable damage no later than 2008.

---

**4**    Given the lack of specificity in Farmers' "blunderbuss" evidentiary objections, the court ordered Farmers to resubmit its objections with proper citations to and detailed recitations of the alleged inconsistent statements in Kling's pleadings, deposition testimony and/or discovery responses on which the objections were based.

*Modified Objections, Final Evidentiary Ruling and Appeal*

On June 18, 2014, as ordered by the court, Farmers submitted explicit, modified evidentiary objections to Kling's evidence in opposition to the summary judgment motion, and a modified proposed order.

Kling responded to the evidentiary objections on June 23, 2014. Farmers replied on June 27, 2014.

On July 1, 2014, the court entered an order on Farmers' modified objections, sustained 22 of the 37 remaining objections (Farmers had withdrawn 11). Judgment was entered on October 22, 2014. This timely appeal followed.

## DISCUSSION

1.    *The Controlling Legal Principles*

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment has the burden to show that "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant is able to make this showing, the burden shifts to the plaintiff to show by admissible evidence that a triable issue of material fact exists. (*Ibid.*)

We independently review the record and the trial court's determination, considering the parties' evidence (with the exception of evidence to which objections were appropriately sustained), and uncontradicted inferences reasonably supported by that evidence. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.)

Our review involves the same three-step process employed by the trial court. First, we identify the issues framed by the pleadings. Second, we determine if the defendant has made an adequate factual showing to justify judgment in its favor. Finally, if the defendant has carried its initial burden, we determine whether the plaintiff has raised a triable factual issue. (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.) To satisfy its burden, the plaintiff "'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

2.     *Summary Judgment was Proper Because Kling was Aware That at Least One Building had Sustained Appreciable Damage by 2008*

a.     *Kling's Policy*

Kling's Policy is an "all risk" policy. Under an "all risk" policy, a peril is covered unless specifically excluded. (*State Farm Fire & Casualty Co. v. Von Der Lieth* (1991) 54 Cal.3d 1123, 1131 (*State Farm*); see *Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406–407 (*Garvey*).) If an event falls within basic policy coverage, it is up to the insurer to prove the claim is excluded. (*Garvey, supra*, 48 Cal.3d at p. 406.)

As pertinent here, Kling's Policy provides that Farmers "will pay for the direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from and Covered Cause of Loss[,]" unless that loss is, among other things, specifically excluded by the Policy. The Policy also provides that Farmers "will not pay for loss or damage caused by or resulting from . . . Settling, cracking, shrinking or expansion." Third party negligence (e.g., inadequate excavation, construction or shoring), is a "risk of direct physical loss" that is not

10

specifically excluded under the Policy. (See *Garvey, supra,* 48 Cal.3d at p. 408; *State Farm, supra,* 54 Cal.3d at pp. 1131–1132.)

The Policy also requires that, in the event of "loss of or damage to Covered Property," Kling must give Farmers "prompt notice of the loss or damage[,]" "a description of how, when and where the loss or damage occurred[,]" and take "all reasonable steps to protect the Covered Property from further damage . . . ." Finally, and critically for purposes of our analysis, the Policy prohibits any "legal action against [Farmers] under [the Policy] unless: . . . . The action is brought within 2 years after the date on which the direct physical loss or damage occurred."

### b. *There is no Dispute that the Neighbor's Negligent Construction Activity was the Efficient Proximate Cause of Kling's Damages*

In California, under an "all risk" policy, first party claims are insured if a covered risk (e.g., third party negligence) is the "efficient proximate cause" of the loss even if an excluded risk (soil subsidence) also contributed to the loss. (*Garvey, supra*, 48 Cal.3d at p. 412; see *Sabella v. Wisler* (1963) 59 Cal.2d 21, 31-32 (*Sabella*) [defining efficient cause to which loss should be attributed as "'the one that sets others in motion'"].) Although typically a question of fact, efficient proximate cause may be determined as a matter of law where, as here, the facts are undisputed. (*Sabella, supra*, 59 Cal.2d at p. 32; *Mission National Ins. Co. v. Coachella Valley Water Dist.* (1989) 210 Cal.App.3d 484, 492.)

Although Kling argues that the initial cracking, settling and subsidence on his land was excluded under the Policy, it is undisputed that he always believed that the efficient proximate cause of the damage to his property was the negligent subterranean construction activity on his neighbor's property. Although he argued that the damage had not progressed to the point that the covered structures were in danger of imminent collapse until late 2010 and 2011, that impending collapse was

11

not the efficient proximate cause. The cause, of which Kling was aware no later than July 2008, was always shoddy work performed on his neighbor's construction project which had caused and continued to cause "direct physical loss or damage" to Kling's covered property and which gave rise to his obligation under the Policy promptly to notify Farmers, providing a "description of the property involved" and "how, when and where the loss or damage occurred." (See *State Farm, supra,* 54 Cal.3d at p. 1133 [insured's property cracked and tilted due to excluded peril (earth movement and rising groundwater levels) but damage was covered because the efficient proximate cause of loss was negligent failure of third parties to adequately preserve the area (a covered peril)].)

By mid-2008, Kling knew or strongly suspected that the damage to his land and buildings was the result of negligent excavation and inadequate shoring on Hassid's project, a covered risk under the Policy. He testified at his deposition in the *Hassid* Action in January 2011, that he had not submitted a claim to his insurer for the damage because he believed Hassid was responsible and was required "to pay [him] for the damage [he] did to [Kling's] property." Indeed, although Kling acknowledged that he had property insurance, he "[didn't] know" "whether or not [he had] any coverage for those purported damages," and "[didn't] recall" ever having "inquired to determine whether [he had] insurance coverage for the alleged 5 and a half million dollars of damages" he sought in the *Hassid* Action, "because [Hassid was] supposed to pay for it."

c.  *Summary Judgment was Properly Granted Based on Kling's Inconsistent Factual Positions*

The trial court granted summary judgment on the ground that Kling's action was barred as a matter of law by the contractual limitations provision because he was aware of appreciable property damage which he attributed to Hassid's

negligent construction as early as 2007 and no later than 2008, but waited to sue Farmers until December 2011. Kling argues that, because he observed no damage to any building before 2010, it cannot be said that he knew or was on notice of "substantial" damage to any "covered" property before then.

The Policy states that the two-year limitations period for filing legal action against Farmers is triggered by "the date on which the direct physical loss or damage occurred." The California Supreme Court defines the date of loss sufficient to trigger a contractual limitations provision as the "point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 687 (*Prudential-LMI*).) This period begins running once *appreciable* (not "substantial," as Kling asserts) damage is reasonably apparent, but does not necessarily turn on the occurrence of the physical event causing the loss. An insured's underestimation of the extent of the damage will not excuse his or her failure to report it. (*Id*. at p. 687.) Thus, the running of the contractual limitation period began not when Kling became aware of the imminent collapse of his building, but when it was reasonably apparent that appreciable damage had occurred, even though the full extent of that damage was not yet known. (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1086 (*Doheny Park*).) Moreover, the occurrence of "appreciable damage" does not depend on whether an insured knows the damage is a covered peril under an all-risk policy. (*Larkspur Isle Condominium Owners' Assn. v. Farmers Ins. Group* (1994) 31 Cal.App.4th 106, 111-112 (*Larkspur Isle*) ["inception of loss" was not delayed until counsel informed insured that damage might be covered].) It is the occurrence of a cognizable event, not the insured's

13

knowledge of the event's legal significance, that triggers the limitations period. (*Lawrence v. Western Mutual Ins. Co*. (1988) 204 Cal.App.3d 565, 573.)

The trial court found, and we agree, that several unexplained contradictions between Kling's pleading and deposition testimony showed that by 2008, Kling knew that at least one building had sustained appreciable damage as a result of what he firmly believed were negligent construction practices on his neighbor's project.

First, in the complaint filed on July 1, 2008 in the *Hassid* Action, Kling alleged that negligent and inadequate shoring, excavation and Hassid's failure to provide lateral support in connection with subterranean construction of the Bay Cities project resulted in instability in and damage to exterior elements of Kling's real property. Kling went on to allege at paragraph 17 of that complaint that: ". . . during the aforesaid construction and continuing to date, support fo*r the structures* on the Kling property *has been compromised* to the point where there has been subsidence *under the building* adjacent the Bay Cities Property causing settling, *cracking of the foundation, cracking in the floor, cracking in the walls and other structural damage* which is as yet unknown, in part, *because [Kling has] yet to remove the interior of the building to determine the whole of the damage . . . .*" (Italics added.)

At Farmers' request, the court took judicial notice of the complaint in the *Hassid* Action, and agreed that these allegations were contradicted by facts later asserted in Kling's self-serving declaration.[5]

Kling argues there is no support for the conclusion that allegations in the complaint in the *Hassid* Action, to which Farmers was not a party, constitute judicial admissions.[6] He is correct, but that point is irrelevant.

Although the allegations are not judicial admissions, they are binding evidentiary admissions. "'It may be stated as a general rule that a pleading

---

[5] Specifically, Kling states that between January and March 2007, he saw only "a very slight crack" in an interior wall of 3115. He goes on to state that "[i]n 2008 and 2009, I did not see additional paint cracks in 3115. . . . In 2007, 2008 and 2009, I did not observe any further paint cracking in unit 3115, I did not observe any cracking of any paint in the interior or exterior of units 3117-3123. During 2007 through 2009, I *did not observe any floor cracks* in the interior of commercial units 3115 to 3123. During 2007 through 2009, *I did not observe any plaster cracks*, ceiling cracks in commercial units 3115 to 3123 other than the one very slight paint crack I identified in 2007 . . . . During 2007 through 2009, I did not observe any separation of walls to ceiling, *or any interior or exterior damage to commercial units 3115 to 3123*." (Italics added.) Except for the statement, "In 2008 and 2009, I did not see additional paint cracks in 3115," the trial court sustained Farmers' evidentiary objections to paragraph 50 of Kling's declaration as speculative, lacking foundation and because it contradicted factual representations made in his prior pleading, deposition testimony and discovery responses.

[6] Kling also claims he was denied a chance to respond to Farmers' claim that facts asserted in his declaration contradicted factual allegations in the *Hassid* Action, because Farmers first raised this argument in its reply brief. Not so. First, the issue understandably was first raised in Farmers' reply because it was not until Kling filed his opposition to the summary judgment motion and declaration that Farmers knew Kling had completely altered his theory of liability. Second, the court gave Kling ample opportunity to respond to Farmers' evidentiary assertions and objections. Kling took full advantage of that opportunity, filing a 76-page response to Farmers modified evidentiary objections as well as a sur-reply.

containing an admission is admissible against the pleader in a proceeding subsequent to the one in which the pleading is filed. [Citations.] This is true even on behalf of a stranger to the former action.' [Citation.]" (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 457 (*Minish*); *Dolinar v. Pedone* (1944) 63 Cal.App.2d 169, 176; cf., *Myers v. Trendwest Resorts, Inc*. (2009) 178 Cal.App.4th 735, 746 ["'"'pleader cannot blow hot and cold as to the facts positively stated"'"'"].)[7]

As the trial court observed, the factual allegations quoted from the *Hassid* complaint reflects that in July 2008 Kling claimed that negligent subterranean construction work on his neighbor's property had caused and was causing appreciable damage to the foundation and other parts of at least one insured structure. The fact of physical damage was clear even though its full extent was not known and would not be known for some time. That language, as the trial court stated, was "demonstrably inconsistent" with factual attestations in the declaration Kling filed five years later in which he claimed that he saw no appreciable damage in or outside any structure before 2010.

The court's decision to reject Kling's attempt to manufacture a factual issue whether he was aware of appreciable structural damage before 2010 is also buttressed by Kling's deposition testimony in the *Hassid* Action. In that testimony, Kling testified that he became aware of negligent construction on the Hassid job site in early January 2007 when he saw soil subsidence and damage to

---

[7] As such, the party against whom the pleading is offered always has an opportunity to show that the pleading's allegations were inadvertently made, unauthorized or made under mistake of fact. (*Minish, supra,* 214 Cal.App.4th at p. 457.) Kling made no such showing.

his patio, a staircase, retaining wall and concrete foundation, and *also saw cracks forming inside and in the front of 3115.*[8]

Kling further testified that he knew at the time he retained Zweigler in January 2007, or a few weeks later, that at least one structure had suffered appreciable damage:

"Q  And when you showed Mr. Zweigler your property, did you show him the interior of the building?
"A  Yes.
"Q  All five addresses?
"A  I don't recall.
"Q  To the best of your recollection, what did he observe the first time?
"A  He observed subsidence caused by [Hassid].
"Q  Where did he observe it?
"A  . . . at the point at which . . . my building . . . touches my retaining wall. [and] *[s]ome part of inside of 3115*.
" . . .
"Q  Did you show him any of the *interior portions of 3117 through 3123*?
"A  *I believe I did*.
"Q  And *did you see any evidence of what you believed was subsidence at that time in any of those addresses*?
"A  I answered that question already, sir.
"Q  You can answer it again.
" . . .

_____

[8]  "Q  . . . when was the first time you became aware of these claimed negligent acts?
"A  . . . . I knew of negligence as to the job site in the first week of January 2007.
"Q  And how did you become aware at that time of this negligence that you claim?
"A  When I saw the subsidence happening on my property.
" . . .
"Q  Well, how did you notice it?
"A  . . . I saw that the block wall had moved west and south from the building. . . . [¶] . . . I noticed other soils subsidence on that date also.
"Q  Where?
"A  In the patio, . . . a retaining wall had split, a stair had separated, a slab of concrete foundation had cracked.  I went into 3115.  A crack was — *cracks were forming inside of 3115*.  There are cracks behind 3117.  *There was a crack in the front of 3115*." (Italics added.)

17

"A  I believe it's been fully answered ad nauseum earlier this morning, sir. [¶] . . . [¶] . . . I will stand by what I said earlier. . . . [¶] To the extent that I leave something out, I'll refer to my previous answer. *3117, floors, ceilings*, patio, plunger, framing the parking lot, façade. 19 cracking." (Italics added.)

Kling asserts that his deposition testimony is inadmissible hearsay because the depositions were not taken in this action.  He is mistaken.  That testimony is admissible as a party admission in this case, regardless of the fact that it occurred in a prior action.  (See Evid. Code, § 1220.)  The California Supreme Court has long held that a party may not create a triable issue of fact to defeat summary judgment merely by means of a self-serving declaration that contradicts his own deposition testimony.  (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22 (*D'Amico*); *Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12.)[9]

In determining whether a triable factual issue exists, the court may give "great weight" to admissions made in discovery and "disregard contradictory and self-serving affidavits of the party."  (*Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451 (*Preach*).)  In *D'Amico*, the court held, that "'[w]here . . . there is a clear and unequivocal admission by the plaintiff . . . in his deposition'" and the plaintiff contradicts that admission in a subsequent declaration, "'we are

---

**9** To date, the California Supreme Court has declined to address the appropriate standard of review for evidentiary rulings in summary judgment proceedings.  (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 ["Thus, we need not decide generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo."].)  However, most appellate courts, including this one, have held that summary judgment evidentiary rulings, like other evidentiary rulings, are reviewed for abuse of discretion. (See e.g., *Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 82-83; *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 181; *Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1427; *Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 192, fn. 15.)

forced to conclude there is no *substantial* evidence of the existence of a triable issue of fact.' [Citation.]"  Such admissions "have a very high credibility value," especially when "obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts."  (*D'Amico, supra*, 11 Cal.3d at pp. 21-22.)  "Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of *fact . . .* , it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits."  (*Id*. at p. 22.)  Where, as here, a declaration submitted in opposition to a motion for summary judgment motion clearly contradicts the declarant's earlier deposition testimony, the court is free to disregard the declaration and "'conclude there is no *substantial* evidence of the existence of a triable issue of fact.'"  (*Id*. at p. 21.)

Kling's declaration briefly acknowledges his deposition testimony in the *Hassid* Action, but makes no effort to explain the significant contradictions between that testimony in 2010 and 2011 and factual representations in his declaration.  (See *Alvis v. County of Ventura* (2009) 178 Cal.App.4th 536, 549 ["We cannot accept as substantial evidence of a triable issue of fact a declaration that directly contradicts the declarant's prior statement, where the contradiction is unexplained.  We may not ignore this significant contradiction."].)  Our thorough review of the record yields no credible explanation for the discrepancies nor any basis upon which to conclude that Kling's deposition testimony was mistaken or the result of his misunderstanding of any question.  (See *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 (*Price*), overruled on another ground by *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1179-1182.) The trial court was entitled to give Kling's deposition testimony "special consideration" (*Girard v. Ball* (1981) 125

19

Cal.App.3d 772, 781) and conclude that his contradictory declaration did not "constitute '*substantial* evidence of the existence of a triable issue of fact.'" (*Advanced Micro Devices, Inc. v. Great American Surplus Lines Ins. Co.* (1988) 199 Cal.App.3d 791, 800; see *Leasman v. Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 382 ["[I]n view of plaintiff's admissions in her deposition . . . that she had suffered no physical injury," contrary affidavits were properly "disregarded as irrelevant, inadmissible or evasive."].)

Further, although *D'Amico* involved a party admission, other cases have extended its rule to party-affiliated experts (*Jacobs v. Fire Ins. Exchange* (1995) 36 Cal.App.4th 1258, 1270) and nonparty witnesses (*Preach, supra,* 12 Cal.App.4th at pp. 1447, 1451). Kling's prior testimony was given under oath in a deposition in his case against Hassid involving the same negligent construction he has always claimed and believed was responsible for the damage caused to his commercial property, we believe the testimony was entitled to deference, consistent with *D'Amico*, even though Farmers was not a party to that litigation.

## II. *Kling's Claim of Equitable Estoppel is Moot*

Kling contends that, even if appreciable damage did occur outside the two-year contractual limitations period, the trial court erred by failing to apply equitable principles of estoppel to preclude Farmers from asserting the limitations provision as a bar to this action.

Specifically, he argues that in 2007, he told his Farmers' agent about cracks in his patio and retaining wall and movement in a block wall on his land. Farmers informed Kling that none of the damage he reported was covered, because his Policy did "not provide coverage for 'soils, land, dirt, cracks' or damage caused by soil deterioration." Relying on *Doheny Park, supra*, 132 Cal.App.4th 1076, Kling argues Farmers is estopped from asserting the limitations provision of the Policy

because he relied on Hamadani's representation that the damage to his property was not covered and delayed filing suit. (*Id*. at p. 1090 ["insurer may be estopped to assert a policy provision limiting the time to sue where it has caused the insured to delay filing suit . . ."].)

As the trial court correctly observed, Kling's estoppel theory has a fundamental problem. To invoke the doctrine of equitable estoppel, Kling must show that he has suffered injury as a result of his reliance on Hamadani's statement. (*Doheny Park, supra*, 132 Cal.App.4th at p. 1090; *Ashou v. Liberty Mutual Fire Ins. Co.* (2006) 138 Cal.App.4th 748, 766-767 (*Ashou*).) Kling has not and cannot make that demonstration. Regardless of what Kling was told by Farmers in 2007, on this record there is no question that, by July 2008, he was well aware of additional facts indicating that appreciable structural damage had occurred as a result of the excavation and subterranean construction on Hassid's property. As a result and at that point, Kling had a contractual obligation to notify Farmers of the physical loss or damage, including a description of how, when and where that loss or damage had occurred. This duty existed whether or not he knew the physical damage or loss was a covered peril under the Policy, and even though he did not yet know the full extent of that damage or loss. (See *Prudential-LMI, supra,* 51 Cal.3d at p. 687; *Larkspur Isle, supra*, 31 Cal.App.4th at pp. 111–112.) Accordingly, Kling's action is time-barred and we need not address his claim of reliance on Hamadani's representations in 2007, nor the cause of action for equitable estoppel.

21

## DISPOSITION

The judgment is affirmed.  Kling shall bear costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.


We concur:



MANELLA, J.



COLLINS, J.